229 F.3d 750 (9th Cir. 2000)
 In re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus, Inc., an Alaska corporation and ATLANTIC PACIFIC FUNDING CORPORATION, a Nevada corporation, Debtors.
THOMAS ALEXANDER; GAY ALEXANDER; ALEXANDER RENTALS; DEBBIE BAILEY; WAYNE BAILEY; SONDRA BAKER; HARRY BAKER; LISA BAKER; LLOYD BEADLE; JAMES BENNETT; MARIA BENNETT; THOMAS BOYD; SHEILA BOYD; LESLIE BOYD; JEREMY BOYD; JILL CAMERON; RAYMOND CAMERON; JOSEPH CAMPBELL; DENNIS CARY; MARVEL CARY; GENE MCCLANAHAN; FARRELL CHRISTENSEN; BRENT COOK; JOLANDA COOK; HEATHER COOK; MELANIE COOK; JIM DAVIS; ROXIE DAVIS; ROGER DELANEY; DOROTHY DELANEY; MARY BETH DIETHELM; NATHAN DIETHELM; ROBERT DUNN; NANCY DUTTON; LINETTE FINSTAD; RICHARD KEDROWSKI; MARY FLICKINGER; ALLEN FUSS; RAYETTE FUSS; IGNATIUS FUSS; JULIA FUSS; TOM FUSS; ARBARA FUSS; VELESTA FUSCO; PAULINE FUSCO; TEO FUSCO; JACQUELINE GOLDRICK; VICTOR GUNN; MARY GUNN; CYNTHIA HACHEZ; MIKE HACHEZ; GARY HALMSTAD; RAYNA HAMM; JOHN R. HILTENBRAND, JR.; GEORGE R. HORNER; JOANN HORNER; GEORGE L. HORNER; JUDITH HORNER; HORNER TRUST; RUSS JOHNSON; BECKY JOHNSON; ROBERT KARLEN; KAREN KARLEN; PAUL KELLER; CARLA KELLER; LEE KENASTON, GERALD KENASTON; JANENE KENASTON; KAREN KENASTON; DON KRATZER, JANICE LARSON, GRETA LINDLEY; KENNETH LINDLEY, LYNN MARVIN; ED MAYNARD; MAUREEN MAYNARD; HEIDI MORTON; LARRY NAUTA; SHERRY NAUTA; LEONARD NELSON; JEANETTE NELSON; ELMER OSTBLOOM; MARGARET STBLOOM; WILLIAM PASCOE; RUTH (SHERWOOD) PUGH; DEE RICHIE; ELIZABETH RICHIE; PAUL RITCHIE; BEN RITCHIE; BRADLEY RITCHIE; BARTHOLOMEW RITCHIE; BURTON RITCHIE; RACHAEL RITCHIE; REBECCA RITCHIE; ROXANNE RITCHIE; PAUL ROBINSON; HARRY SINZ; VICKI VICKERY; SALLY ROSS; MARY SCOTT; JAMES SISK; WAYNE TAYLOR; JOHN THORNTON; LINDSEY THORNTON; CARL TOMPKINS; ALANE TOMPKINS; VERLIN TOMPKINS; LINDA TOMPKINS; SCOTT TOMPKINS; CATHERINE TOMPKINS; CHARLES TRAVIS; CLIFFORD TRAVIS; BARBARA TRAVIS; EVERETT TRAVIS; TIM WALLIS; MARY WALLIS; RYAN WALRATH; CAROL WALRATH; CRAIG ZOET; ROBERT ZOET, Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus, Inc., an Alaska corporation and Atlantic Pacific Funding Corporation, a Nevada corporation, Debtors.
MONIKA BROWN; JAMES LENTINE; JACK C. MELLOR; MORNA W. MELLOR; JONATHAN WIDDIS, Plaintiffs-Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus, Inc., an Alaska corporation and Atlantic Pacific Funding Corporation, a Nevada corporation, Debtors.
RANDY HANSEN; DAY ESSLEY; CLAUDIA ESSLEY; TIM MCKAY; LISA MCKAY; DEANNA SANDERSON, aka Dee Thornell; JOSEPH TAYLOR, SR., deceased; MARIA E. TAYLOR; JOSEPH TAYLOR, JR.; PATRIOT MANAGEMENT CORPORATION; and JAMES ROBERT WALKER, Plaintiffs-Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba WORLD PLUS, INC., an Alaska corporation and ATLANTIC PACIFIC FUNDING CORP., a Nevada corporation, Debtors.
RICHARD ALFORD; CAROL ALFORD; EDWARD AMBROZEVITCH; KATHY AMBROZEVITCH; CHARLES ASHTON; BONNIE BENHAM; LARRY BENHAM; JOEL BOGGS; RITA BOGGS; ARTAN BUCKMEIER, aka Buckmeier Enterprises; ROXANNE BUCKMEIER aka Roxanne Siebeis; FLORIAN BUCKMEIER; VICTORIA BUCKMEIER, PAUL CARTER; STEEVYN CYSEWSKI; ALFRED DERAMUS; DEBORAH DESMOND; JIM DESMOND; JON DOTY; HOMER DOTY; CAROLYN DUNCAN; JAMES DUNLAP; PAT FENDERSON; ADELE FENDERSON; RONALD FRANKLIN; SHIRLEY FRANKLIN; ESTHER FREDERICKSON; LAWRENCE GILBERTSON; DAVID GLOVER; JAMIE GLOVER; SAMUEL HALBERT; REBECCA HALBERT; ALEX HAMAN; ELIZABETH HAMAN; JANET HAMAN; J&A HAMAN ENTERPRISES; GEORGE HOTRUM; SHARON HOTRUM; TARA HOTRUM; GEORGE HOTRUM; EULA INGRAHAM; LOIS KRIZE dba Marketing Plus dba Three K Company; MARGARET KRIZE; ROSEMARY KRIZE; ERIC LARSON; NANCY LARSON; RICHARD LINDEMAN; ELLEN LINSLEY; JAMES LONGWITH; RICHARD LYNCH; ZOLA LYNCH; DONALD OINES; ANN OINES; SALCHA MARINE, INC.; MARGO SAVELL; RICHARD SAVELL; HENRIETTA SELISKER; FRANK SELISKER; VICKE SPEAR-SHIPLEY; CLARK SPRINGER; BARBARA SPRINGER; GERARD UPHUES aka GARY UPHUES; DONA UPHUES; ESTATE OF ROSEMARY WALDRON; GERRY WYSE, Plaintiffs-Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus; WORLD PLUS, INC., an Alaska corporation and ATLANTIC PACIFIC FUNDING CORP., a Nevada corporation, Debtors.
RICHARD CLAUSEN; JAMES L. CRAWFORD; STEPHEN CRONKHITE; DALE CRONKHITE; RAY GUFFEY; GLORIA GUFFEY; JAMES SHOOK; JULIE SHOOK; EVIE S. WHITMIRE; CHARLES P. WHITMIRE, Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus; WORLD PLUS, INC., an Alaska corporation; and ATLANTIC PACIFIC FUNDING CORP., a Nevada corporation, Debtors.
RICHARD ACKISS; PATRICIA BABCOCK; DONALD W. BARRY; JOSEPH BELL; MARY BELL; SANDRA J. BENSON, EDDIE L. BENSON; DEKE BURNETT; NORAH WEST; BETT YORK; CARL CADY; CATHY CADY; LYELL CHITTENDEN; A.B. CLIFFORD, JR.; EILA CLIFFORD; DAVID CURRY; DONNA CURRY; CURRY GAMES, INC.; BERNARD DARLING; ARLEEN DARLING; DAVID A. DASH; MICHAEL P. DYKEMA; SHELLY A. DYKEMA; RICHARD DYKEMA; GISELA DYKEMA; BRIAN R. FOX; FRED B. FOX; ALAN R. GERING; CAROL S. GERING; ROBERT E. GIINTHER; MARTA L. GIINTHER; G. H. (PETE) GUNN; LORRETTA GUNN; PEGGY ANN THRANUM; CAROL NOVAHA; GENE HANSEN; MEBBLE HANSEN; RETTA M. JONES; GENE HANSEN; JEROME KRIER; TOTEM SERVICES, INC., RONALD J. KRISHNEK; JOHN K. LOHRKE; RODNEY J. MARCANTEL; VINCENZO MAZZIER; MARIA D. MAZZIER; CHERYL MAZZIER; MARUTINE MCMANUS; BEVERLY JOHNSON; DOUG E. CAMPBELL; DEAN OWEN; JANET OWEN; WILLIAM H. PARRETT; ANN E. DEHNER; ROBERT L. PHILLIPS; MARY E. PHILLIPS; MARGARET RUSSELL; DARRELL L. RUSSELL; THOMAS SCHMIDT; CRAIG A. SCHUMACHER; DEBRA SINGEL; DAN SNODGRESS; DARLENE SNODGRESS; ROBERT TAYLOR; BETTY TAYLOR; L. MICHAEL THOMAS; FRANCES THOMAS; DEBORAH F. VILLAS; FRANCES S.L. WILLIAMSON; PAMELA ODOM; LINDA L. WINTERS, Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus; WORLD PLUS, INC., an Alaska corporation; and ATLANTIC PACIFIC FUNDING CORP., a Nevada corporation, Debtors.
TERRY ANDERSON; S. GORDON BORJESSON; ARLYS BORJESSON; RICHARD BULLION; PHYLLIS BULLION; FOREST BUTTON; JOHN L. DASHIELL; JACKIE L. DASHIELL; DON DAVIS; DARLENE DAVIS; JAMES DAVIS; PAULA DAVIS; ROSA DAVIS; JAMES DAVIS; PAUL E. DAVIS; THORA E. DAVIS; TAY T. EPPERSON; CECELIA A. ESPARZA; ALAN FIDELO; DARLENE FIDELO; KEN GOLDMAN; SYLVIA GOLDMAN; JOYCE GOLDMAN; JOHN HARGESHEIMER; MARK K. HARRIS; REBECCA L. EAMES; JOHN RANDY HART; REBECCA BATT; SHERMAN HART; MARTIN S. JACKSON; SCOTT A. JOHANNES; KARIS D. JOHANNES; MARK JOHANNES; DONNA KREIENSIECK; LARRY L. LAWTON; JOHN LECLAIR; NIKI LECLAIR;TERENCE LORD; JOAN LORD; JOHN REILLY MICHAEL; MARTIN J. PATTERSON; DIANNE H. PATTERSON; RICHARD TAY; ANTHONY RAY; DONALD ROOSA; PATRICIA ROOSA; KEN ROOSA; HELEN ROOSA; BETTY KUHL; HERMANN M. RUESS; HOWARD M. SAKLAD; FLOYD SHILANSKI; ROSA SHILANSKI; PATRICIA J. SILZEL; TONYA TORRES; ANNA WIDDIS; STEPHEN WIDMER; JIM WILKINS; GAIL WILKINS; HARRY WONDERS; ALAN S. ZANGEN; KATHY A. ZANGEN; ESTELLE ZANGEN, Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus; WORLD PLUS, INC., an Alaska corporation; and ATLANTIC PACIFIC FUNDING CORP., a Nevada corporation, Debtors.
DAVID G. BETSCHART; SUSAN BETSCHART; BETSCHART ELECTRIC CO., INC.; BETSCHART ELECTRIC CO., INC. MONEY PURCHASE PENSION PLAN; CHRISTOPHER J. FARWELL; PEGGY A. FARWELL; CRAIG FORSTER; VICTORIA FORSTER; FREDRIC L. GUENTHER; HARRIETTE GUENTHER; ESTATE OF LLOYD W. GUENTHER; DONALD G. ARNOLD; JAMES V. GRIMES; JULIA P. GRIMES; GREGORY L. KLUH; G. L. KLUH & SONS JEWELERS, INC. PROFIT SHARING PLAN; G.L. KLUH & SONS, INC.; KATHLEEN KLUH; DEAN LAMB; MARY ELLEN MCKAIN; JOHN S. MURRAY; ROSEMARY MURRAY; PETER MURRAY; JACK J. SCHOEPFER; WENDY SCHOEPFER; CHARLES L. SCOTT; MARIAH C.M. SCOTT; CHARLES A. SCOTT, Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
BRIAN BEMIS; LORETTA BEMIS; ROBERT BEMIS; KRIS BEMIS; JOSEPH BIELSKI; PATRICIA BIELSKI; AVAN BREES; ALASKA PLUS; BEVERLY KRAMME; CHRISTIAN BLANKENSHIP; MARVIN BREES; DARLENE BROWN; ROBERT CAMPBELL; JOAN F. CELUSNIK; WAYNE L. CLARK; VIRGINIA L. CLARK; BARBARA DAVENPORT; MICHAEL FORD; GRANT D. DAVENPORT; FRANK DEARMIN; PATRICIA DEARMIN; TIM DOW; ALICE ELLINGSON; HAROLD ELLINGSON; GREGORY ELY; THERESA ELY; DIANA K. EVANS aka DIANA KILLINGER; PETE GARDNER; W. MARTIN HAMMER; CYNTHIA HAMMER; DAVID HARSHMAM; JOE HARSHMAN; JOHN HERMAN; ROBERT HERMAN; KAYE HERMAN; CHUCK JOHNSON; MARGARET JOHNSON; RAY KIMBERLIN dba CUMMINSBUILDING, aka JEANETTE KIMBERLIN; FAR NORTH UTILITIES, INC.; TRANSARTIC, INC.; CRAIG KINDS, KYLE KINDA; SHARON M. MENSKI; JOHN M. MANTHEY; WILLIAM D. MILLER; DORIS R. MILLER; SANDY NELSON; SHANNA NELSON; JOSEPH NYQUIST; NEIL NYQUIST; JACK O'BRIEN; CHERRYL PEARSON; WILBERT PEARSON; FRAN GUTMAN; WILLARD GUTMAN; WILLIAM PFISTERER; LINDA PFISTERER; CARL PFISTERER; GENEVIEVE PFISTERER; AMANDA PFISTERER; WESTRE PFISTERER; GLENN PFISTERER; DONALD PRESLER; KRISTIN PRESLER; PEGGY L. PUGH; RANDY REYNOLDS; BRENDA LACY; THOMAS RICHARDSON; JOHN ROSIE; TYANNE ROSIE; ROBERT RUMMER; KAREN RUMMER; JEFF SANDERSON; DAWN SANDERSON; GARY SANDERSON; KRISTINE SANDERSON; CHUCK SANDERSON; DELBERT SANDERSON; BERNADETTE SANDERSON; JOE SANDERSON; LINDA
SANDERSON; TOM SCARBOROUGH; JUDY SCARBOROUGH; DANIEL SCHACHER; JULIE SCHACHER; LARRY SCHAFER; VELMA SCHAFER; ADELLE SMITH; CHRISTOPHER SMITH; JONATHON SMITH; JANA SMITH; ELIZABETH SMITH; JOSEPH C. STAM; DIANE C. STAM; AMANDA I. STAM; RICK STORM; WES UHLMAN; CAROLYN VANDER-KOOY; BARRY VANDER-KOOY; CONNIE VILLA; FREDERICK VILLA; ROBERT WEAVER; SANDY WEAVER; RICHARD D. WEBB; BILL WILLIAMS; JEFF L. WILSON; SANDY WYLIE-ECHEVERRIA; TINA WYLIE-ECHEVERRIA, Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
In Re: RAEJEAN BONHAM, aka Jean Bonham, aka Jeannie Bonham, dba World Plus; WORLD PLUS, INC., an Alaska corporation and ATLANTIC PACIFIC FUNDING CORP., a Nevada corporation, Debtors.
TERRY FRANKLIN; LYNNE G. FRANKLIN; SHIRLYN, INC., Appellants,
v.
LARRY D. COMPTON, Trustee, Appellee.
 Nos. 98-36081, 98-36083, 98-36086, 98-36089, 98-36091, 98-36093, 98-36108, 98-36109, 98-36205, 99-35046.
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted August 2, 2000
Filed October 4, 2000
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 Ronald W. Goss, Seattle, Washington, and Gerald K. Smith, Phoenix, Arizona, for appellants Richard K. Alford et al.
 Grant E. Courtney, Seattle, Washington, for appellants David G. Betschart et al.
 Rebecca S. Copeland, Anchorage, Alaska, for appellants Terry Anderson et al.
 Cabot Christianson, Anchorage, Alaska, for appellee Larry D. Compton.
 Appeal from the United States District Court for the District of Alaska. James K. Singleton, District Judge, Presiding. D.C. No.CV-98-00167-JKS
 Before: Dorothy W. Nelson, Stephen Reinhardt and Sidney R. Thomas, CircuitJudges.
 THOMAS, Circuit Judge:
 
 
 1
 We must decide whether a bankruptcy court may order substantive consolidation of two non-debtor corporations, World Plus, Inc. and Atlantic Pacific Funding Corporation, with the bankruptcy estate of Chapter 7 debtor Raejean Bonham nunc pro tunc as of the filing date of the involuntary Chapter 7 petition. We have jurisdiction pursuant to 28 U.S.C.S 158(d), and we reverse the decision of the district court and remand with instructions to affirm the bankruptcy court's order of nunc pro tunc substantive consolidation.
 
 
 2
 * This appeal arises out of a failed Ponzi scheme[1] operated by debtor Raejean Bonham originally through a proprietorship known as "World Plus," which she eventually incorporated as World Plus, Inc. ("WPI"), and beginning in 1992, under the name of Atlantic Pacific Funding Corp. ("APFC"), a Nevada corporation. See In re Bonham, 226 B.R. 56, 61-63 (Bankr. D. Alaska 1998). The stated purpose of both WPI and APFC was to purchase frequent flier miles available from various airlines or third parties at a discount and use them to acquire airline tickets, which were then to be sold to the public at a substantial profit. See id.
 
 
 3
 Bonham was the sole shareholder and director of both WPI and APFC. See id. On September 18, 1995, the state of Alaska involuntarily dissolved WPI. APFC was never registered to do business in Alaska, had no employees and appears to have only engaged in activities related to the Ponzi scheme. APFC was not a viable Nevada corporation after October 1, 1995. See id. at 62-63.
 
 
 4
 Beginning in 1989, Bonham began issuing as an individual, as WPI, and later as APFC, short-term investment contracts with promised returns of 20% to 50% over periods ranging from 10 days to 8 months. See id. For investment contracts issued after 1992, investors indiscriminately received contracts from both WPI and APFC regardless of the entity to which investors made investment payments. See id. at 67. The airline ticket sales business, however, did not generate sufficient revenue to cover the debt service on the investment contracts. To service these debts, Bonham transferred investment income from one investor directly to another investor, and between WPI and APFC, in satisfaction of prior investment contracts. See id. at 69. Moreover, Bonham used proceeds from WPI and APFC towards her personal finances. See id. at 72.
 
 
 5
 On December 19, 1995, a group of WPI and APFC investors commenced an involuntary Chapter 7 proceeding against Bonham to collect on unpaid investment contracts. See id. at 60. The bankruptcy court appointed Larry D. Compton as the interim Chapter 7 trustee. Initially, Bonham contested the involuntary Chapter 7 petition; however, she subsequently agreed to the petition and filed a voluntary Chapter 11 petition. See id. On January 8, 1996, the bankruptcy court converted the bankruptcy case to Chapter 11 and appointed Compton as Chapter 11 trustee. Id. However, after Compton investigated Bonham's operations and concluded that he could not continue the business because it was the front for a Ponzi scheme, the bankruptcy court converted the case back to Chapter 7 and appointed Compton as Chapter 7 trustee. Id. Since the initiation of the bankruptcy case, approximately 1,111 proofs of claim have been filed against Bonham's debtor estate for over $53 million. See id.
 
 
 6
 Because minimal net proceeds were expected from the liquidation of Bonham's personal assets and WPI and APFC had no material assets, Compton filed over 600 adversary proceedings against investors of Bonham, WPI or APFC to avoid fraudulent transfers. Id. These cases are administered through a lead adversary action referred to as the Bonham Recovery Action ("BRA"), Adv. Case No. F95-00897-168 HAR.[2] The investors, however, challenged the trustee's standing to avoid transfers made by WPI and APFC because the Chapter 7 petition named only Bonham as the debtor and moved to dismiss the adversary proceedings for lack of standing.
 
 
 7
 In response, Compton filed a motion for substantive consolidation nunc pro tunc of Bonham's debtor estate with the non-debtor estates of WPI and APFC effective as of December 19, 1995, the date on which the involuntary bankruptcy proceeding was commenced against Bonham. In a lengthy order making extensive findings of fact and conclusions of law, the bankruptcy court ordered the nunc pro tunc substantive consolidation of WPI and APFC with Bonham's estate in order to assure that the overcompensated initial investors would share in the losses suffered by subsequent investors. See id. at 74-75, 102. In doing so, the bankruptcy court determined that (1) the motions process was an appropriate procedure for substantive consolidation as long as there was notice and an opportunity to be heard, and (2) Bonham had constructed a Ponzi scheme for which WPI and APFC were simply vehicles Bonham used to perpetuate the fraud. See id. at 94-95, 96, 101-02. In a separate order, the bankruptcy court enumerated the terms and conditions of its order of substantive consolidation, which specifically reserved to the trustee the power to exercise the avoidance rights of the consolidated entities under 11 U.S.C. 544, 547 and 548.
 
 
 8
 The investors -in fourteen separate notices of appeal -appealed the substantive consolidation order to federal district court. In a brief order filed on September 30, 1998, the district court concluded that the bankruptcy court's order of substantive consolidation was not an appealable final order, dismissed the appeal for lack of finality and remanded for further proceedings. In doing so, the district court noted that the consolidation order (and the investors' objections)"are . . . bound up in the underlying merits of the case." The court therefore concluded that "any attempt to sort out the rights and wrongs of the parties at this stage is premature" because "[i]t is impossible to decide the consolidation issue without addressing the underlying record."
 
 
 9
 A majority of the investors appealed the district court order within 30 days of the issuance of the order dismissing the investors' appeals for lack of finality. However, four investors, represented by counsel Gary Sleeper and Mark P. Melchert, filed their notices of appeal on November 4, 1998, 34 days after the district court issued its order.[3]
 
 II
 
 10
 A threshold jurisdictional issue is whether the bankruptcy court's order of substantive consolidation and the district court remand order for further proceedings are final and appealable orders pursuant to 28 U.S.C. 158. We review de novo the district court's ruling that a bankruptcy court's decision is not an appealable, final order. See Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 782 (9th Cir. 1999).
 
 
 11
 Under 28 U.S.C. 158(d), appellate jurisdiction exists when the bankruptcy court order and the decision of the district court acting in its bankruptcy appellate capacity are both final orders.[4] See Elliot v. Four Seasons Prop. (In re Frontier Prop.), 979 F.2d 1358, 1362 (9th Cir. 1992) (citations omitted); King v. Stanton (In re Stanton), 766 F.2d 1283, 1285 (9th Cir. 1985); Dominguez v. Miller (In re Dominguez), 51 F.3d 1502, 1506 (9th Cir. 1995). Ordinarily, a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."[5] In re Frontier Prop., 979 F.2d at 1362 (citations omitted).
 
 
 12
 We have adopted a "pragmatic approach" to finality in bankruptcy because "certain proceedings in a bankruptcy case are so distinctive and conclusive either to the rights of individual parties or the ultimate outcome of the case that final decisions as to them should be appealable as of right." Id. at 1363 (citations omitted). Our approach "emphasizes the need for immediate review, rather than whether the order is technically interlocutory . . ." Allen v. Old Nat'l Bank of Washington (In re Allen), 896 F.2d 416, 418 (9th Cir. 1990) (citation omitted).
 
 
 13
 Under our pragmatic approach, a bankruptcy court order is considered to be final and thus appealable "where it 1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040, 1043 (9th Cir. 1997); see In re Allen , 896 F.2d at 418-19 (citing Mason v. Integrity Insurance Co. (In re Mason), 709 F.2d 1313, 1315 (9th Cir. 1983))."Although this finality rule is given additional flexibility in the bankruptcy proceedings context, traditional finality concerns nonetheless dictate that `we avoid having a case make two complete trips through the appellate process.' " In re Lewis, 113 F.3d at 1043 (quoting Vylene Enterprises, Inc. v. Naugles, Inc. (In re Vylene Enterprises, Inc.), 968 F.2d 887, 895 (9th Cir. 1992)).
 
 
 14
 We have yet to directly address whether a bankruptcy court's order of substantive consolidation is final and appealable under 158(a). However, other circuits have generally addressed interlocutory appeals of substantive consolidation orders without consideration of the jurisdictional question raised here. See, e.g., First Nat'l Bank of El Dorado v. Giller (In re Giller), 962 F.2d 796, 797-98 (8th Cir. 1992); Eastgroup Properties v. Southern Motel Assoc., Ltd. , 935 F.2d 245, 248 (11th Cir. 1991); Union Savings Bank v. Augie/ Restivo Baking Co. Ltd. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 516-17 (2d Cir. 1988); cf. Drabkin v. Midland-Ross Corp. (In re Auto-Train Corp., Inc.), 810 F.2d 270, 272-73 (D.C. Cir. 1987).
 
 
 15
 Consistent with the approach of our sister circuits, and properly applying Frontier Prop., we conclude that substantive consolidation orders are final and appealable under 158(a). A substantive consolidation order seriously affects the substantive rights of the involved parties. The bankruptcy rules recognize as much:
 
 
 16
 Consolidation, as distinguished from joint administration, is neither authorized nor prohibited by this rule since the propriety of consolidation depends on substantive considerations and affects the substantive rights of the creditors of the different estates.
 
 
 17
 Adv. Ctte. Note to Bankr. R. 1015. Numerous cases and commentators have similarly noted that substantive consolidation "is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights." See, e.g., Flora Mir Candy Corp. v. R.S. Dickson & Co. (In re Flora Mir Candy Corp.), 432 F.2d 1060, 1062-63 (2d Cir. 1970); accord Reider v. Fed. Deposit Ins. Corp. (In re Reider), 31 F.3d 1102, 1107 (11th Cir. 1994); cf. J. Stephen Gilbert, Substantive Consolidation in Bankruptcy: A Primer, 43 Vand. L. Rev. 207, 208 (1990); Hugh M. Ray and Nancy Clarkson, Bankruptcy Law Reform: A Need for Change? A Creditor's Perspective, 48 Consumer Fin. L.Q. Rep. 476, 480 (1994) (advocating that substantive consolidation orders should be appealable). Consolidation "almost invariably redistributes wealth among the creditors of the various entities " because the consolidated entities are likely to have different debt-toasset ratios. Eastgroup, 935 F.2d at 248 (quoting In re AutoTrain, 810 F.2d at 276); In re Augie/Restivo , 860 F.2d at 519.
 
 
 18
 In the instant case, bankruptcy court "finally determine[d]" the "discrete issue" of whether WPI and APFC should be substantively consolidated with Bonham's estate, a decision that "resolve[d] and seriously affect[ed ] substantive rights" of the parties.[6] The consolidation order is of the sort that "can cause irreparable harm if the losing party must wait until the bankruptcy court proceedings terminate before appealing." In re Allen, 896 F.2d at 418 (citations omitted). We therefore conclude that the district court erred by holding that the order was not final for the purposes of appellate review. Cf. In re Lewis, 113 F.3d at 1044 (finding a disgorgement for purposes of appeal). The bankruptcy court order was final and appealable.
 
 
 19
 The district court order was also final and appealable under 158(d). Although a district court renders a final order when it affirms or reverses a bankruptcy court's final order, see In re Vylene Enterprises, 968 F.2d at 894, a district court's order is ordinarily not final "when the district court remands for further factual findings related to a central issue raised on appeal." Bonner Mall Partnership v. U.S. Bancorp Mortgage Co. (In re Bonner Mall Partnership ), 2 F.3d 899, 904 (9th Cir. 1993); see Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore), 81 F.3d 103, 105 (9th Cir. 1996). We have applied two related balancing tests in determining finality, both in conjunction and separately. See Walthall v. U.S., 131 F.3d 1289, 1293 (9th Cir. 1997) (citing Vylene test); In re Lakeshore, 81 F.3d at 106; In re Bonner Mall, 2 F.3d at 904 (citing In re Stanton, 766 F.2d at 1288 n.8).
 
 
 20
 In contrast to the finality concerns raised in the usual case in which the district court reverses and remands the bankruptcy court order for further factual findings, the district court here declined to exercise jurisdiction after determining that the substantive consolidation order was non-final, and therefore, remanded this action for further proceedings. Thus, the sole question posed on appeal is whether the district court properly dismissed the investors' appeal for lack of finality. As such, the balancing tests set forth in Vylene and Bonner Mall do not apply. Because the district court erred in dismissing the investors' appeal for lack of finality, we may exercise jurisdiction over the appeal of the district court decision.
 
 III
 
 21
 The bankruptcy court did not err in substantively consolidating the estates, nor in doing so nunc pro tunc. We review the bankruptcy court's decision independently of the district court's decision. See In re Lewis, 113 F.3d at 1043. We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. See id. A bankruptcy court's determination of whether to issue an order nunc pro tunc "is reviewed for abuse of discretion or erroneous application of the law." See Atkins v. Wain, Samuel & Co. (In re Atkins), 69 F.3d 970, 973 (9th Cir. 1995). Thus, we will not reverse the nunc pro tunc aspect of the bankruptcy court's order of substantive consolidation unless we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached. See id.
 
 
 22
 * Contrary to the investors' argument, the bankruptcy court had the power to enter the substantive consolidation order.[7] "[F]or many purposes, courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity." Pepper v. Litton, 308 U.S. 295, 304 (1939) (internal quotations and citations omitted); see also Local Loan Co. v. Hunt, 292 U.S. 234, 240 (1934); Bardes v. First Nat'l Bank of Hawarden, 178 U.S. 524, 535 (1900). The bankruptcy court's power of substantive consolidation has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898. See In re Reider, 31 F.3d at 1105; see also Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 219 (1941).
 
 
 23
 Although substantive consolidation was not codified by the Bankruptcy Reform Acts of 1978 or 1994, see Pub.L. No. 95598 (1978) and Pub.L. No. 103-394, 104(a) (1994), as were related provisions allowing for procedural consolidation or joint administration, courts, as well as the bankruptcy rules, recognize its validity and have ordered substantive consolidation subsequent to the enactment of the Bankruptcy Code. See, e.g., In re Reider, 31 F.3d at 1107; cf. Adv. Ctte. Notes to Bankr. Rule 1015 (allowing for joint administration, but "[t]his rule does not deal with the consolidation of cases involving two or more separate debtors . . . [which is] neither authorized nor prohibited by this rule . . ."). At present, consistent with its historical roots, the power of substantive consolidation derives from the bankruptcy court's general equity powers as expressed in 105 of the Bankruptcy Code.[8] See In re Augie/Restivo, 860 F.2d at 518 n.1.
 
 
 24
 The theory of substantive consolidation emanates from the core of bankruptcy jurisprudence. As Justice Douglas noted, "[t]he power of the bankruptcy court to subordinate claims or adjudicate equities arising out of the relationship between the several creditors is complete." Sampsell, 313 U.S. at 219. "[T]he theme of the Bankruptcy Act is equality of distribution." Id. Orders of substantive consolidation combine the assets and liabilities of separate and distinct -but related -legal entities into a single pool and treat them as though they belong to a single entity. See Federal Deposit Insurance Corp. v. Colonial Realty Co., 966 F.2d 57, 58-59 (2d Cir. 1992); Eastgroup, 935 F.2d at 248; Norton Bankruptcy Law and Practice 2d 20:4 (1997). Substantive consolidation "enabl[es] a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." James Talcott, Inc. v. Wharton (In re Continental Vending Machine Corp.), 517 F.2d 997, 1000 (2d Cir. 1975). The consolidated assets create a single fund from which all claims against the consolidated debtors are satisfied; duplicate and inter-company claims are extinguished; and, the creditors of the consolidated entities are combined for purposes of voting on reorganization plans. See In re Augie/ Restivo, 860 F.2d at 518. Without the check of substantive consolidation, debtors could insulate money through transfers among inter-company shell corporations with impunity.
 
 
 25
 The primary purpose of substantive consolidation "is to ensure the equitable treatment of all creditors. " Id. Absent any statutory guidelines and with an eye towards its equitable goals, courts have ratified substantive consolidation in a variety of circumstances. For example, the substantive consolidation of two estates was first tacitly approved by the Supreme Court in the context of a debtor who had abused corporate formalities and allegedly made fraudulent conveyances of the debtor shareholder's assets to the corporation. See Sampsell, 313 U.S. at 218-19. In a series of early substantive consolidation decisions, the Second Circuit noted several circumstances in which substantive consolidation is proper, including where the creditors of the consolidated entities treated the entities as a unit and the business affairs of the consolidated entities were hopelessly entangled. See In re Augie/Restivo, 860 F.2d at 518; In re Flora Mir, 432 F.2d at 1062-63; In re Continental Vending, 517 F.2d at 1000.
 
 
 26
 More recently, in Giller, the Eighth Circuit considered the appeal by a creditor of several debtor corporations that were substantively consolidated because the sole and majority shareholder of the corporations had abused the debtors' corporate forms and had caused transfers that would give rise to fraudulent conveyance and preference causes of action. See 962 F.2d at 798-99. In Auto-Train, the D.C. Circuit considered an appeal of an order of substantive consolidation which had been urged by the trustee so that the trustee could attack a transfer of funds by a wholly-owned subsidiary of the debtor as a voidable preference. See 810 F.2d at 272-73. In doing so, the court stated that substantive consolidation is ordered "typically to avoid the expense or difficulty of sorting out the debtor's records to determine the separate assets and liabilities of each affiliated entity." See id. at 276.[9]
 
 
 27
 Courts have permitted the consolidation of non-debtor and debtor entities in furtherance of the equitable goals of substantive consolidation. See, e.g., In re Auto-Train, 810 F.2d at 275; In re Munford, 115 B.R. at 395-96; Walter E. Heller & Co. v. Langenkamp (In re Tureaud), 59 B.R. 973, 974, 978 (N.D. Okla. 1986). Moreover, bankruptcy courts have sanctioned the substantive consolidation of two or more entities nunc pro tunc in order to allow a trustee or creditors to attack fraudulent transfers or avoidable preferences made by the debtor or consolidated entities as of the date of filing of the initial bankruptcy petition. See, e.g., First National Bank of Barnesville v. Rafoth (In re Baker & Getty Financial Srvcs., Inc.), 974 F.2d 712, 720 (6th Cir. 1992); In re Auto-Train, 810 F.2d at 275-77; Kroh Brothers Development Co. v. Kroh Bros. Mgmt. Co. (In re Kroh Bros. Dev. Co. ), 117 B.R. 499, 502 (W.D. Mo. 1989).
 
 
 28
 Thus, even though substantive consolidation was not codified in the statutory overhaul of bankruptcy law in 1978, the equitable power undoubtedly survived enactment of the Bankruptcy Code. No case has held to the contrary.
 
 B
 
 29
 The bankruptcy court did not err in using its substantive consolidation power in this case. Two broad themes have emerged from substantive consolidation case law: in ordering substantive consolidation, courts must (1) consider whether there is a disregard of corporate formalities and commingling of assets by various entities; and (2) balance the benefits that substantive consolidation would bring against the harms that it would cause. See In re Reider, 31 F.3d at 1106; In re Standard Brands Paint Co., 154 B.R. 563, 568 (Bankr. C.D. Cal. 1993); see also In re Augie/Restivo, 860 F.2d at 518-19 (collecting cases). No uniform guideline for determining when to order substantive consolidation has emerged. Rather,"[o]nly through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors." In re Auto-Train, 860 F. 2d at 276; Colonial Realty, 966 F.2d at 61.
 
 
 30
 Two "similar but not identical" tests have been applied to assess whether substantive consolidation is proper, neither of which we have had occasion to apply or adopt. See In re Reider, 31 F.3d at 1107; see also In re Augie/Restivo, 860 F.2d at 518; In re Auto-Train, 810 F.2d at 276-77. In AutoTrain, the D.C. Circuit articulated a three-part burden-shifting test as part of "a searching inquiry to ensure that consolidation yields benefits offsetting the harm it inflicts to objecting parties." 810 F.2d at 276. Under this test, a proponent of substantive consolidation must first show that "(1) there is a substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or to realize some benefit."[10] Eastgroup, 935 F.2d at 249 (adopting Auto-Train test). When this prima facie showing is made, "a presumption arises `that creditors have not relied solely on the credit of one of the entities involved.' " Id. (quoting Matter of G.V. Lewellyn & Co., Inc., 26 B.R. 246, 251-52 (Bankr. S.D. Iowa 1982)). The burden then shifts to an objecting creditor to show that "(1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation." Id. (citing In re Auto-Train, 810 F.2d at 276). Finally, if the objecting creditor makes the required showing, "the court may order consolidation only if it determines that the demonstrated benefits of consolidation `heavily' outweigh the harm." In re Auto-Train, 810 F.2d at 276. Each element of the Auto-Train test must be satisfied to properly order substantive consolidation.[11]
 
 
 31
 The Second Circuit has applied an independent test which requires the consideration of two factors:"(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." In re Reider, 31 F.3d at 1108 (citing In re Augie/Restivo, 860 F.2d at 518); see also Colonial Realty, 966 F.2d at 61. The presence of either factor is a sufficient basis to order substantive consolidation. See id. The first factor, reliance on the separate credit of the entity, is based on the consideration that lenders "structure their loans according to their expectations regarding th[e] borrower and do not anticipate either having the assets of a more sound company available in the case of insolvency or having the creditors of a less sound debtor compete for the borrower's assets." In re Augie/Restivo, 860 F.2d at 518-19. Consolidation under the second factor, entanglement of the debtor's affairs, is justified only where "the time and expense necessary even to attempt to unscramble them [is] so substantial as to threaten the realization of any net assets for all the creditors" or where no accurate identification and allocation of assets is possible. Id. at 519.
 
 
 32
 The Second Circuit's approach is more grounded in substantive consolidation and economic theory; it is also more easily applied. Thus, we adopt it and utilize it in our analysis of this case. In applying the Second Circuit's test, we must determine whether Bonham's creditors either dealt with WPI, APFC and Bonham as a single economic unit and did not rely on the separate credit of each of the consolidated entities; or, whether the operations of WPI and APFC were excessively entangled with Bonham's affairs to the extent that consolidation will benefit all creditors. See In re Augie/Restivo, 860 F.2d at 518.
 
 
 33
 The application of the Second Circuit test makes clear that the bankruptcy court did not err in ordering substantive consolidation of WPI, APFC and Bonham's estate under either of these elements. The bankruptcy court's findings support its conclusion that Bonham, WPI and APFC "were but instrumentalities of the bankrupt with no separate existence of their own." See Soviero v. Franklin Nat'l Bank of Long Island, 328 F.2d 446, 448 (2d Cir. 1964). The Second Circuit noted in Soviero that "there existed a unity of interest and ownership common to all corporations, and that to adhere to the separate corporate entities theory would result in an injustice to the bankrupt's creditors." See id. The same observation applies to the instant appeal. See also In re Kroh Bros., 117 B.R. at 502 (nunc pro tunc consolidation proper to allow trustee standing to pursue transfers as a preference and avoidable transfer).
 
 
 34
 The record clearly shows, and the investors do not dispute the bankruptcy court's determination, that Bonham commingled her personal assets with those of WPI and APFC, that there was no clear demarcation between the affairs of Bonham, WPI and APFC, and that Bonham often commingled the assets and names of WPI and APFC. See In re Bonham, 226 B.R. at 60-71 & P 2.8.7-2.8.8. In light of the multiplicity of investors and claims and the lack of cooperation on the part of Bonham, the bankruptcy court did not clearly err in determining that the exercise of disentangling the affairs of Bonham, WPI and APFC would be needlessly expensive and possibly futile. See id. atP 2.8.12.
 
 
 35
 The bankruptcy court also did not err in according little weight to the investors' affidavits stating that they had relied on the separate credit of WPI and APFC in entering into investment contracts. On appeal, the investors again point to these affidavits and contend that the bankruptcy court "ignored" them. The burden rests on the investors to overcome the presumption that they did not rely on the separate credit of WPI or APFC. See In re Auto-Train, 810 F.2d at 276. The bankruptcy court examined each of these affidavits, observed that each was boilerplate and that the affiants provided no other evidence, such as financial statements, in support of their affidavits. See id. at 101 & #9E9E # 2.12.4-2.12.8. In light of the substantial evidence presented by Compton supporting his contention that Bonham commingled the assets of WPI and APFC and used their names interchangeably, the lack of any independent financial statements or corporate tax returns of WPI and APFC, and Bonham's testimony that she personally handled each investment, see In re Bonham, 226 B.R. at 7375, it is clear that the bankruptcy court did not err in crediting little weight to these affidavits and determining that the creditors could not have believed that they were dealing with separate entities. See In re Augie/Restivo, 860 F.2d at 519.
 
 
 36
 The investors contend that the bankruptcy court failed to properly weigh the benefits of substantive consolidation against the harm to the investors.[12] The "harm" usually measured is the harm to the entity which is being substantively consolidated. Here, the only "harm" is that third parties may have greater exposure to risk because they may lose a legal defense to what would otherwise be viable claims of fraudulent transfer. In short, the alleged "harm" is that fraudulent transfers of money will be recovered, the estates will be equitably administered and the assets equitably distributed. The bankruptcy court did not err in this aspect of its analysis.
 
 
 37
 Of course, "[r]esort to consolidation . . . should not be Pavlovian," see In re Augie/Restivo, 860 F.2d at 519, but as almost every other court has noted, should be used "sparingly," In re Flora Mir, 432 F.2d at 1062-63, and in keeping with the equitable nature of substantive consolidation. Nonetheless, the benefits of substantive consolidation in this appeal are clear. As the bankruptcy court recognized, nunc pro tunc consolidation will make it possible for Compton to pursue avoidance actions under 544(b) and 548, benefitting the creditors of Bonham, WPI and APFC. See In re Bonham, 226 B.R. at 101 (citing In re Kroh, 117 B.R. at 502). Without consolidation, claimants who have received no payments from WPI and APFC will recover no funds invested in either of those entities. In short, substantive consolidation will allow a truly equitable distribution of assets by treating the corporate shells as a single economic unit.
 
 
 38
 Contrary to the investors' assertions, the instant appeal is distinguishable from our affirmance of a district court's refusal to order substantive consolidation in Anaconda. In Anaconda, creditors of the parent corporation-debtor sought to share in the assets of its subsidiaries to the same extent as the creditors would have been entitled to share in the assets of the parent corporation. See 336 F.2d at 626. The subsidiaries had been created to raise money for the parent corporation by selling bonds secured by mortgages on property sold by the parent corporation. The parent corporation subsequently misrepresented the value of some mortgages and issued some fictitious mortgages. See id.
 
 
 39
 Even though the parent corporation benefitted from its subsidiaries, we noted that consolidation would be improper based on several factors distinguishing Anaconda from the instant appeal: (1) the parent corporation and the subsidiaries were not operated as a single entity; (2) the subsidiaries were not operated as part of a scheme to perpetuate the fraud; and, (3) the objecting creditors of the parent corporation had relied solely upon the sole credit of the parent corporation and did not seek additional security from the subsidiaries. See id. at 627. Based on these findings, the district court had correctly held that the subsidiaries had existed as separate corporate entities and that the objecting creditors had not been prejudiced by the corporate relationship between the parent and subsidiaries. See id. at 627-28. In contrast, Bonham, WPI and APFC were not operated as separate entities, and the creditors of APFC and WPI -like Bonham's creditors -relied solely on Bonham, and not on the separate credit of the two corporations.
 
 
 40
 Finally, the investors' contention that the bankruptcy court cannot order substantive consolidation for the sole purpose of preserving the trustee's avoidance power, where there are no assets to be pooled, is without merit. The primary motivation for ordering substantive consolidation in the instant appeal is to allow the trustee to pursue avoidance actions against "Target" creditors who have recouped, in part or in full, their investments with Bonham. With substantive consolidation nunc pro tunc, the trustee will be able to recover fraudulent transfers made by WPI and APFC within one year prior to the filing of the involuntary petition against Bonham and to redistribute the recovered assets equitably to all of Bonham's creditors. See 11 U.S.C. 548(a)(1); see also 11 U.S.C. 547(b) (trustee may avoid preferential transfer made to a debtor on or within ninety days before the date of the filing of the bankruptcy petition). Such a motivation is not without precedent and is proper in light of the equitable nature of substantive consolidation. Cf. In re Giller, 962 F.2d at 799; In re Kroh Bros., 117 B.R. at 502.
 
 
 41
 Absent express preservation of the trustee's avoidance power, an order of substantive consolidation would ordinarily eliminate that power. For example, in Parkway Calabasas, the bankruptcy court held that the trustee's fraudulent conveyance cause of action in an adversary proceeding was rendered moot by the substantive consolidation of two bankruptcy cases where the bankruptcy court order failed to preserve the trustee's avoidance powers. See 89 B.R. at 834; see also In re Giller, 962 F.2d at 798-99 (recognizing that ordinarily substantive consolidation would eliminate justification for exercise of trustee's avoidance power).
 
 
 42
 However, "[t]he bankruptcy court has the power, in appropriate circumstances, to order less than complete substantive consolidation, or to place conditions on the substantive consolidation," including the preservation of avoidance claims by the formerly separate estates. In re Parkway Calabasas, 89 B.R. at 837; see Moran v. Hong Kong & Shanghai Banking Corp. (In re Deltacorp, Inc.), 179 B.R. 773, 777 (Bankr. S.D.N.Y. 1995); see also In re Giller , 962 F.2d at 799; In re Standard Brands, 154 B.R. at 570. In Giller, for example, only one of the consolidated entities had any assets to be pooled upon substantive consolidation. The corporate debtors moved to substantively consolidate their case because Giller had abused corporate forms and caused them to make transfers potentially subject to fraudulent conveyance claims and because the sole administratively solvent debtor could fund litigation necessary to recover fraudulent transfers. The Eighth Circuit affirmed the bankruptcy court's preservation of the avoidance powers through substantive consolidation because that was the only means to fund the litigation necessary to permit a distribution to the unsecured creditors. See In re Giller, 962 F.2d at 797-98 ("only hope for paying the bulk of creditors was to use the assets of one solvent Debtor to pursue fraudulent conveyance and preference causes of action"). The court stated: "eliminating the trustee's avoidance power after consolidation would also eliminate the very reason for ordering consolidation in the first place, that is, to obtain the funds required to recover transferred assets." Id.
 
 
 43
 Similarly, in Parkway Calabasas, the bankruptcy court recognized that it could have imposed conditions or qualifications on the order of substantive consolidation that would have allowed the trustee to assert fraudulent conveyance claims in the adversary proceeding, but failed to do so. See 89 B.R. at 837-38; see also In re Deltacorp, 179 B.R. at 777; In re Kroh, 117 B.R. at 502 (nunc pro tunc consolidation proper to allow trustee standing to pursue transfers as a preference and avoidable transfer).
 
 
 44
 Here, the bankruptcy court expressly ordered the substantive consolidation of WPI and APFC with Bonham's estate to allow Compton to pursue avoidance actions against investors who received fraudulent transfers in connection with the Ponzi investment scheme. See In re Bonham , 226 B.R. at 94-95. As in Giller, eliminating Compton's avoidance power after consolidation would also eliminate the very reason for ordering consolidation -to recover funds transferred as part of the Ponzi scheme. The bankruptcy court therefore did not err in ordering substantive consolidation and in preserving the trustee's avoidance powers in doing so.
 
 C
 
 45
 The bankruptcy court did not err in substantively consolidating WPI and APFC with Bonham's estate nunc pro tunc. Absent nunc pro tunc substantive consolidation, the trustee would be barred from seeking the avoidance of fraudulent conveyances made through WPI and APFC prior to one year before the date of the order of substantive consolidation.
 
 
 46
 We have yet to consider whether a bankruptcy court may order nunc pro tunc substantive consolidation. In Parkway Calabasas, for example, the trustee sought to preserve fraudulent conveyance causes of action through nunc pro tunc substantive consolidation, despite the fact that substantive consolidation was ordered to be prospective only. See 89 B.R. at 836. The bankruptcy court, however, did not reach the question of nunc pro tunc consolidation because the bankruptcy case had been filed within the period to allow the trustee's preference claims to go forward and because the order of "complete" substantive consolidation barred in whole the trustee's fraudulent conveyance claims. See id. at 840.
 
 
 47
 Several courts, however, have held that substantive consolidation nunc pro tunc is proper under the appropriate circumstances. In Auto-Train, the bankruptcy court substantively consolidated a wholly-owned non-debtor subsidiary of a debtor corporation in a pending bankruptcy case. See 810 F.2d at 275. The trustee sought to rely on the filing date of the parent corporation's bankruptcy petition to attack a transfer made by the subsidiary to one of its creditors prior to the date of substantive consolidation. See id. The D.C. Circuit noted that before using its equitable nunc pro tunc powers to give a consolidation order retroactive effect, a bankruptcy court must undertake "an additional and slightly different balancing process" than the test employed to assess whether to substantively consolidate debtor entities. Id. at 276. According to Auto-Train, "a court should enter a consolidation order nunc pro tunc only when it is satisfied that the use of nunc pro tunc yields benefits greater than the harm it inflicts, " an inquiry that virtually parallels that used by the D.C. Circuit in assessing whether to order substantive consolidation in the first place. Id. at 277. The court elaborated:
 
 
 48
 Because the consolidation proceeding will already have established a substantial identity between the entities to be consolidated, this inquiry begins with the proponent of nunc pro tunc making a showing that nunc pro tunc is necessary to achieve some benefit or avoid some harm. Following this showing, a potential preference holder may challenge the nunc pro tunc entry of the consolidation order by establishing that it relied on the separate credit of one of the entities to be consolidated and that it will be harmed by the shift in filing dates. If a potential preference holder meets this burden, the court must then determine whether the benefits of nunc pro tunc outweigh its detriments.
 
 
 49
 Id. The D.C. Circuit nonetheless applied this rule to reverse the nunc pro tunc feature of the bankruptcy court's order of substantive consolidation because the bankruptcy court had given "little or no weight" to the objecting creditor's reliance on the separate credit of the consolidated entity. Id.; but see In re Kroh, 117 B.R. at 502 (affirming nunc pro tunc substantive consolidation where Auto-Train showing made).
 
 
 50
 While we ratify nunc pro tunc consolidation, we decline to adopt Auto-Train's approach to determining whether nunc pro tunc substantive consolidation should be ordered for many of the same reasons the Sixth Circuit declined to do so in Baker. In Baker, the Sixth Circuit allowed for the nunc pro tunc consolidation of two debtor estates. See 974 F.2d at 720. The court, however, noted that the Auto-Train test so closely paralleled the inquiry conducted under Auto-Train to order substantive consolidation that it would add "needless confusion to allow relitigation of this question in the guise of litigation over the filing date, particularly when the outcomes will almost always be the same." Id. at 721; see also In re Kroh, 117 B.R. at 502. Instead, the Sixth Circuit adopted the approach set forth in Matter of Evans Temple Church of God in Christ & Community Ctr., Inc., 55 B.R. 976, 981-82 (Bankr. N.D. Ohio 1986).
 
 
 51
 In Matter of Evans, the bankruptcy court noted that implicit in any order of substantive consolidation is the determination "that the assets and liabilities of one debtor are substantially the same assets and liabilities of the second debtor." 55 B.R. at 982. The court went on to explain:
 
 
 52
 If the reasons for substantively consolidating two cases filed under the Code is to protect the unsecured creditors of both debtors where the assets and liabilities of the debtors are so intermingled as to make them substantially the same, and if the purpose of the preference provisions is to assure equality of distribution among all creditors, then it logically follows that where two cases are substantively consolidated upon a determination by the Court that the assets and liabilities of each debtor are not clearly separable, the preference provisions require us to treat the creditors of both debtors in substantially the same manner. In order for us to do so, we must assign a like filing date to both Debtors for purposes of the preference provisions.
 
 
 53
 Id. The Baker court similarly concluded that "[t]he order of consolidation rests on the foundation that the assets of all of the consolidated parties are substantially the same, " and that the earliest filing date is the controlling date. In re Baker, 974 F.2d at 721; but see In re Tureaud, 59 B.R. at 977-78 (ordering substantive consolidation as of date of filing of application for substantive consolidation, and not date of filing of bankruptcy petition).
 
 
 54
 We agree with the Sixth Circuit and adopt a similar rationale. See In re Baker, 974 F.2d at 720. Our abecedarian prerequisite to ordering substantive consolidation is that the two factors set forth in Augie/Restivo must be satisfied. That assessment requires that either (1) the creditors dealt with the consolidated entities as if they were the same, or (2) the affairs of the consolidated entities are so entangled that it would not be feasible to identify and allocate all of their assets and liabilities. In either case, the bankruptcy court must in essence determine that the assets of all of the consolidated parties are substantially the same. Moreover, the effect of substantive consolidation is to pool both the assets and liabilities of the consolidated entities and to treat them as the same in satisfying the claims of the creditors. As such, we see no principled need to apply the layered analysis set forth in AutoTrain. Rather, we leave it to the discretion of the bankruptcy court to determine in light of the equitable nature of substantive consolidation whether nunc pro tunc consolidation should be ordered. However, the cautionary principles which apply to orders of substantive consolidation must be considered with particular care before a court orders nunc pro tunc consolidation: the power should be sparingly used and must be tailored to meet the needs of each particular case.
 
 
 55
 Applying this approach, it is clear that the bankruptcy court did not err in ordering substantive consolidation nunc pro tunc. Bonham commingled her personal assets with those of WPI and APFC, and failed to maintain any corporate distinction between those entities to the extent that there was little to distinguish Bonham, WPI and APFC. As such, the filing date of the original involuntary bankruptcy petition is the controlling date from which to measure the limitations period for the trustee's avoidance actions. In light of the foregoing, the bankruptcy court did not err in substantively consolidating WPI and APFC with Bonham's estate nunc pro tunc.
 
 IV
 
 56
 We reverse the decision of the district court and remand with instructions to affirm the order of the bankruptcy court substantively consolidating Bonham's estate with WPI and APFC nunc pro tunc.
 
 
 57
 REVERSED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 Notes:
 
 
 [1]
 "The term `Ponzi scheme' is derived from Charles Ponzi, a famous Boston swindler. With a capital of $150, Ponzi began to borrow money on his own promissory notes at a 50% rate of interest payable in 90 days. Ponzi collected nearly $10 million in 8 months beginning in 1919, using the funds of new investors to pay off those whose notes had come due." United States v. Masten, 170 F.3d. 790, 797 n.9 (7th Cir. 1999) (quotations and citations omitted). Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors.
 
 
 [2]
 A bankruptcy trustee has power to avoid fraudulent transfers under the Bankruptcy Code and pursuant to state law. See 11 U.S.C. 544(b), 548; see also Wyle v. C.H. Rider & Family (In re United Energy Corp.), 944 F.2d 589, 593 (9th Cir. 1991). The "investors " who seek review of the order of substantive consolidation are characterized by the bankruptcy court as "Targets" of the avoidance actions, i.e., creditors of WPI, APFC and Bonham who were paid pre-petition, but are subject via the BRA to avoidance claims. See In re Bonham, 226 B.R. at 94.
 
 
 [3]
 These appeals were timely despite having been filed 30 days after entry of the district court's order of dismissal and remand to the bankruptcy court for further proceedings. See Fed. R. App. P. 4(a). Because the district court did not enter a separate judgment after dismissing the investors' appeal of the bankruptcy court's order of substantive consolidation for lack of finality, the time for filing a notice of appeal never began to run. McCalden v. Calif. Library Ass'n, 955 F.2d 1214, 1218 (9th Cir. 1990) ("the time for appeal does not start running until a judgment is . . . set forth in a separate document and properly entered by the clerk of the court."). As set forth in McCalden, under Fed. R. App. P. 4(a)(6), the time for appeal does not start running even when a court has given sufficient notice that it has dismissed a case, as long as the separate-document rule has not been complied with. See id.; see also Corrigan v. Bargala, 140 F.3d 815, 818-19 (9th Cir. 1998).
 
 
 [4]
 Under 28 U.S.C. 158(d), we have jurisdiction over "appeals from all final decisions, judgments, orders and decrees entered" under 28 U.S.C. 158(a), which in turn gives the district court jurisdiction to hear appeals "from final judgments, orders, and decrees" of the bankruptcy court.
 
 
 [5]
 An order may be final and appealable even when the time for filing an appeal has not begun to run. See McCalden, 955 F.2d at 1218. This circuit has held that the rule requiring district courts to enter judgment on a separate document must be "mechanically applied" in order to avoid confusion as to when the time for appeal has begun to run. Id. However, a district court's failure to comply with the separate-document requirement has no bearing on the question whether the court's judgment or order is final and appealable and does not render an appeal premature.
 
 
 [6]
 The bankruptcy court after giving notice to the parties and conducting evidentiary hearings made extensive findings of fact and conclusions of law in ordering consolidation. See In re Bonham , 226 B.R. at 95-101; cf. In re Giller, 962 F.2d at 798; In re Mason , 709 F.2d at 1317 (order for relief final because procedure on order for relief petition has attributes of adversary proceedings). Among these findings, the bankruptcy court concluded that Bonham operated a Ponzi scheme; that Bonham had transferred investment income from one investor to another in satisfaction of prior investment contracts; that she had misused investment income for personal benefit; and that she had intermingled and confused the accounts of both WPI and APFC. See In re Bonham, 226 B.R. at PP 2.6.1-4, 2.8.1012, 2.11.1-5. The bankruptcy court further concluded that substantive consolidation was appropriate for three separate reasons: (1) the financial affairs of Bonham, WPI and APFC were "hopelessly entangled" resulting in significant harm to numerous claimants; (2) the claimants were enticed into investing in a fraudulent Ponzi scheme, and Bonham used investment funds to pay other investors and for personal benefit, and (3) Bonham, WPI and APFC should be treated as alter egos because insufficient funds were available to cover all of the creditors' claims. See id. at 96-97.
 
 
 [7]
 This court has previously discussed the doctrine, but never considered a direct challenge to the bankruptcy court's power to employ it. See Gill v. Sierra Pacific Constr., Inc. (In re Parkway Calabasas), 89 B.R. 832 (Bankr. C.D. Cal. 1988), aff'd, 949 F.2d 1058 (9th Cir. 1991); cf. United States v. Alaska Nat'l Bank of the North (In re Walsh Construction, Inc.), 669 F.2d 1325, 1330 (9th Cir. 1982) (recognizing in dicta power to substantively consolidate entities, but noting that power to be "used sparingly"); Anaconda Building Materials Co. v. Newland, 336 F.2d 625 (9th Cir. 1964).
 
 
 [8]
 Section 105(a) states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. 105(a).
 
 
 [9]
 Courts have ordered substantive consolidation in numerous procedural contexts. For example, a bankruptcy court may order substantive consolidation as a contested matter upon motion by the involved parties, as was done in the instant appeal, or via an adversary proceeding or other procedural device, as long as there is notice and an opportunity to be heard. See In re Reider, 31 F.3d at 1108; Colonial Realty, 966 F.2d at 58; In re Giller, 962 F.2d at 798; see also Munford, Inc. v. TOC Retail, Inc. (In re Munford, Inc.), 115 B.R. 390, 391 (Bankr. N.D. Ga. 1990) (substantive consolidation pursued through adversary proceeding).
 
 
 [10]
 Courts have noted a non-determinative list of factors that a court should consider in determining whether a proponent of substantive consolidation has established a prima facie case for substantive consolidation. See, e.g., Eastgroup, 935 F.2d at 249-50 (citing In re Vecco Construction Indus., 4 B.R. 407, 410 (Bankr. E.D. Va. 1980)). These factors include: (1) the presence or absence of consolidated financial statements; (2) the unity of interests and ownership between various corporate entities; (3) the existence of parent and intercorporate guarantees on loans; (4) the degree of difficulty in segregating and ascertaining individual assets and liabilities; (5) the existence of transfers of assets without formal observance of corporate formalities; (6) the commingling of assets and business functions; (7) the profitability of consolidation at a single physical location. See In re Vecco Constr., 4 B.R. at 410. See also Fish v. East, 114 F.2d 177 (10th Cir. 1940) (listing 10 factors relevant to substantive consolidation); Pension Benefit Guar. Corp. v. Ouimet Corp., 711 F.2d 1085, 1093 (1st Cir. 1983); In re Luth, 28 B.R. 564, 566-67 (Bankr. D. Idaho 1983).
 
 
 [11]
 The Eighth Circuit in Giller has adopted a three-factor variant of the Auto-Train test: "1) the necessity of consolidation due to the interrelationship among the debtors; 2) whether the benefits of consolidation outweigh the harm to creditors; and (3) prejudice resulting from not consolidating the debtors." See 962 F.2d at 799 (citation omitted); cf. Eastgroup, 935 F.2d at 248-50.
 
 
 [12]
 In part, they argue that the bankruptcy court failed to conduct an explicit cost-benefit analysis, but rather, relied "only on general notions of fairness." The investors cite to no authority that requires any sort of costbenefit analysis. Rather, substantive consolidation is premised on a "sole aim: fairness to all creditors," and not on any formalistic cost-benefit analysis. Cf. Colonial Realty, 966 F.2d at 61.