**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. ID-15-1010-JuKiF |
| ) | |
| JAY P. CLARK, ) | Bk. No. 12-00649-TLM |
| ) | |
| Debtor. ) | Adv. No. 13-06016-TLM |
| _____ ) | |
| CLARK'S CRYSTAL SPRINGS RANCH,) | |
| LLC; CLARK FARMS FAMILY TRUST,) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**\* |
| ) | |
| JEREMY J. GUGINO, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on March 17, 2016
at Pasadena, California

Filed - March 30, 2016

Appeal from the United States Bankruptcy Court
for the District of Idaho

Honorable Terry L. Myers, Chief Bankruptcy Judge, Presiding
_____

Appearances:    Nolan Sorensen of S&P Legal LLC argued for
appellants Clark's Crystal Springs Ranch, LLC and
Clark Farms Family Trust; Matthew Todd
Christensen of Angstman, Johnson & Associates,
PLLC argued for appellee Jeremy J. Gugino,
chapter 7 trustee.
_____

Before:  JURY, KIRSCHER, and FARIS, Bankruptcy Judges.

---

 \* This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

-1-

Chapter 7[1] trustee, Jeremy J. Gugino (Trustee), filed an adversary complaint against Clark's Crystal Springs Ranch, LLC (LLC) and Clark Farms Family Trust (Trust) (collectively, Defendants) seeking, among other things, a judgment substantively consolidating the bankruptcy estate of Jay P. Clark (Debtor) with the LLC and its sole member, the Trust. After a trial, the bankruptcy court issued a decision finding that the requirements for substantive consolidation articulated in Alexander v. Compton (In re Bonham), 229 F.3d 750 (9th Cir. 2000), were met and entered judgment substantively consolidating Debtor's estate with the LLC and the Trust nunc pro tunc. This appeal followed. We AFFIRM.

## I.  FACTS

### A.  The Trust

Debtor, at one time a lawyer, formed the Trust in 2008 and was the grantor and sole trustee. At that time, the trust property was described as $1.00 transferred by the grantor. The agreement gave the grantor discretion to name the Trust as a beneficiary of life insurance policies, deposit property with the Trust or devise property to the Trust. In addition, the trust agreement gave Debtor, as grantor, immediate benefits while living: "the Trustee shall distribute to or for the benefit of the Grantor such sums from income and principal as the Grantor may at any time request." The Trust did not provide

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

for Debtor's children during his lifetime nor did it specifically identify them as beneficiaries. However, upon his death, the trust agreement provided that the Trust's property should be administered and distributed to his "issue" according to the Trust's provisions.

Debtor was the initial trustee of the Trust. Under § 4.04 of the trust agreement, the trustee could resign on 30 days' notice. That section further provided:

> Upon the death, resignation, or disability of Jay P. Clark, then Judith Constance (Clark) Appleby shall serve as Trustee of this Clark Farms Family Trust. Upon the resignation of any Trustee, if no successor Trustee is designated, as permitted by this Clark Farms Family Trust, a successor shall be appointed by a court having jurisdiction over the trust with respect to which such Trustee has resigned.

As described below, when Debtor resigned as trustee, this provision was ignored. The trust agreement also contained a spendthrift clause.

Finally, while one provision of the Trust stated that it was irrevocable and not subject to amendment, another provision authorized the Debtor, as grantor, to amend the Trust at any time. Debtor exercised the authority to amend in May 2010. This amendment changed several provisions. First, the trust property was described as all the assets of the LLC which were primarily farm machinery and vehicles owned by the LLC. The value of the assets was asserted to be at least $100,000, and Debtor, as trustee, was required to maintain this "minimum value." Second, it stated that so long as the Trust earned income through the operation of the LLC, the Trust would pay for certain expenses such as a cell phone, housing, and a vehicle,

on behalf of Debtor's children. Finally, the amendment made the Trust irrevocable, but its language purporting to do so was ambiguous at best.

**B.    The LLC**

Two weeks after the Trust was created, articles of organization of the LLC were filed with the Idaho Secretary of State. Debtor signed the documents, which disclosed him as the initial registered agent. The form indicates that the LLC is "member-managed." The LLC's operating agreement stated that the Trust was the sole member and manager of the LLC. Thus, Debtor individually was neither a member nor manager of the LLC.

The record shows that Debtor exercised total and sole control over the LLC's operations. Moreover, despite the fact that he was neither a member nor manager, Debtor often identified himself as one or the other. Further, although he was not a member, Debtor's sole compensation for operating the farm came through "draws" from the LLC. These "draws" were paid directly from the LLC to third parties for Debtor's personal expenses or those of his children.

In addition, one of the assets of the LLC was farm equipment which was "leased" from Debtor's parents. The January 14, 2008 lease was executed on the eve of Debtor's chapter 12 filing in 2012. However, in response to discovery, Defendants stated the LLC "owns" farm machinery and itemized equipment with an auction value of $364,600. The LLC's Quickbooks report summarized "purchased" farming equipment from John Clark valued at $203,192.92 and "other" used equipment valued at $560,928.72. The record also shows that the LLC

-4-

asserted ownership rights in $354,000 of crop insurance proceeds and, due to Trustee's intervention, that check was currently being held by the insurance company.[2] The LLC had liabilities of $676,796.98 and Debtor was personally liable for most of those debts as shown by the proofs of claim filed by creditors in Debtor's bankruptcy case.

Finally, the record shows that no tax returns were prepared for the LLC. Rather, the income, profit and losses, depreciation of assets, and other relevant information were on Debtor's personal tax returns.

## C. Bankruptcy Events

On March 27, 2012, Debtor filed a voluntary chapter 12 petition in his own name dba Crystal Springs Ranch. At this time, Debtor was the trustee of the Trust and thus manager of the LLC.

On May 31, 2013, the bankruptcy court granted a creditor's motion to convert the case to chapter 7 under § 1208(d) which allows for conversion "upon a showing that the debtor has committed fraud in connection with the case." On the same date, Trustee was appointed and Debtor resigned as trustee of the Trust and manager of the LLC. As described below, Debtor then found a successor trustee and manager for the LLC.

On June 7, 2013, Trustee filed an adversary complaint against the LLC and the Trust alleging various claims in an

---

[2] On June 10, 2013, the court issued an injunction freezing the Trust's and LLC's assets. Accordingly, there were essentially no farming "operations" thereafter, even though Debtor attempted to procure the crop insurance proceeds for the LLC.

effort to recover and bring into the estate the assets of the LLC consisting of $20,000 in a checking account, a crop insurance check of $354,000, and farming equipment with an unknown value. In the complaint, Trustee sought (1) a declaration that the LLC and the Trust are invalid entities created as part of a scheme to hinder, defraud, or delay Debtor's creditors (Sham Entities Claim); (2) a finding that the LLC and the Trust are alter egos of Debtor and a determination allowing Trustee to disregard the separate corporate existence of those entities and treat the assets of the LLC and the Trust as assets of the bankruptcy estate (Alter Ego Claim); (3) a declaration that the Trust is a revocable trust with Debtor retaining the right to revoke the Trust at any time (Revocable Trust Claim); and (4) a judgment for the substantive consolidation of the assets and liabilities of Debtor, the LLC, and the Trust (Substantive Consolidation Claim).

After a two-day trial, the bankruptcy court took the matter under submission. On December 30, 2014, the bankruptcy court issued its memorandum decision. The court dismissed Trustee's Sham Entities Claim after concluding that Trustee failed to present sufficient evidence of Debtor's financial circumstances, conduct, or creditor activity in 2008 that would shed light on his motives when forming the Trust and the LLC. With respect to the Alter Ego Claim, the court observed that "veil-piercing, or reverse veil-piercing" is not an independent cause of action, but a remedy and tantamount to a request for substantive consolidation. Therefore, the bankruptcy court analyzed Trustee's arguments and facts related to the Alter Ego Claim in

the context of the Substantive Consolidation Claim. The court dismissed the Revocable Trust Claim as moot due to its finding that substantive consolidation was appropriate.

The bankruptcy court applied the two-part disjunctive test for substantive consolidation set forth in Bonham: whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit **or** whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. In re Bonham, 229 F.3d at 766. As to the first factor, after noting Debtor's financial and operational commingling of his personal affairs with the Trust and the LLC, the court found the evidence established that creditors generally dealt with Debtor and the LLC as a single economic unit.

The bankruptcy court found the evidence showed there was a unity of interest between Debtor and the LLC and its member Trust and that there was no clear demarcation between Debtor's affairs and those of the LLC and its member Trust. Debtor "drew at his unfettered pleasure from the LLC," and all such distributions were characterized as "Jay's Income (owner draws)." However, there was no record keeping or accounting of distributions by Debtor either as trustee of the Trust to himself as grantor/beneficiary or to his children as beneficiaries outside of the LLC's "owner draws" entries. As a result, the court found "there was an exploitation of, and a disregard for the economic and legal separateness of, the LLC and the Trust." The bankruptcy court did not find Debtor's testimony regarding the separateness of the LLC and the Trust

-7-

from his own personal affairs credible or trustworthy.

In considering the second factor under Bonham, the court concluded that the evidence showed the financial affairs of Debtor, the LLC, and the Trust were so entangled that unraveling them would require significant time, effort, and expense, and there was no realistic assurance that the result would be accurate or without potential injury. Therefore, the bankruptcy court concluded that substantive consolidation would benefit creditors and far outweigh any potential harm.

On January 5, 2015, the bankruptcy court entered the judgment substantively consolidating Debtor's estate with the Trust and the LLC effective nunc pro tunc as of the March 27, 2012 filing date. Under the judgment, Trustee retained all avoidance powers for property that was transferred by the LLC or the Trust after the date of the filing.

Defendants filed a timely notice of appeal from the judgment. They then filed a motion for a stay pending appeal, which the bankruptcy court denied on January 30, 2015.

Trustee filed a motion to sell the assets which were divested from Defendants through the substantive consolidation. The bankruptcy court granted this motion on February 5, 2015. Defendants then sought a stay pending appeal from the Panel. On February 10, 2015, a two-judge Panel denied the motion. Since then, Trustee sold various farm machinery, equipment, motor vehicles, tools and other personal property and has proceeded to recover various machinery or monies through his avoidance powers.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUE

Did the bankruptcy court err by entering a judgment to substantively consolidate the estate of Debtor with the LLC and its member Trust?

## IV.  STANDARDS OF REVIEW

In this case, the "rule of law" is articulated by the Ninth Circuit's decision in In re Bonham, 229 F.3d 750.  We therefore must determine whether the facts support substantive consolidation as ordered by the bankruptcy court.  Factual findings are reviewed under the clearly erroneous standard.  A factual finding is clearly erroneous if it is "(1) illogical; (2) implausible; or (3) without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We may affirm the bankruptcy court on any ground supported by the record.  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004).

## V.  DISCUSSION

**A.  The bankruptcy court has the authority to order substantive consolidation of a nondebtor entity with a debtor under In re Bonham.**

As a threshold issue and raised for the first time on appeal, Defendants contend that the bankruptcy court lacks equitable power to substantively consolidate nondebtor estates with a debtor's estate under Law v. Siegel, 134 S. Ct. 1188

-9-

(2014). In general, we do not consider an issue raised for the first time on appeal, although we have discretion to hear previously unconsidered claims when the issue presented is purely one of law and does not depend on the factual record developed in the bankruptcy court. Cold Mountain v. Garber, 375 F.3d 884, 891 (9th Cir. 2004). Because the issue Defendants raise meets this criteria, we exercise our discretion and consider it.

We are not persuaded by Defendants' arguments. The Supreme Court's ruling in Siegel is not applicable under these circumstances — the facts are distinguishable,[3] and the rule of law that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code" was previously set forth in Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988). The Ninth Circuit's decision in In re Bonham was rendered after Norwest,

---

[3] In Siegel, the debtor fabricated a lien against his home in an attempt to keep equity in the home from his creditors and also claimed a $75,000 homestead exemption under California Civil Procedure Code section 704.730(a)(1). The chapter 7 trustee successfully challenged the lien and obtained a determination from the bankruptcy court that the debtor had perpetrated a fraud. The court ruled that the trustee could surcharge the debtor's homestead exemption to pay the trustee's attorneys' fees. The debtor appealed, and this Panel and the Ninth Circuit both affirmed. The Supreme Court reversed, holding that the general equitable powers of § 105(a) did not provide authority for judge-made exceptions to explicit mandates of the Bankruptcy Code. Because § 522(k) explicitly prohibits the use of exempt property to satisfy administrative expenses such as attorney fees, the bankruptcy court was not authorized to invoke a judge-made equitable exception to order otherwise. 134 S. Ct. at 1194 ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.").

-10-

and there is no Ninth Circuit case suggesting that bankruptcy courts no longer have the authority to order substantive consolidation.  See Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Tr. Corps.), 530 B.R. 711 (Bankr. C.D. Cal. 2015).  There is thus no basis to "read broad new rules into Supreme Court rulings in order to specifically ignore Ninth Circuit precedent."  Id. at 723; see also In re Bonham, 229 F.3d at 763 (noting that the bankruptcy court's power of substantive consolidation has been considered part of the bankruptcy court's general equitable powers since the passage of the Bankruptcy Act of 1898 and that "this equitable power undoubtedly survived enactment of the Bankruptcy Code").

**B.   Substantive consolidation is federal bankruptcy law.**

Next, Defendants argue that the bankruptcy court erred by not considering property rights under Idaho law as directed by Butner v. United States, 440 U.S. 48, 54-56 (1979).  Defendants contend that it is impossible to collapse an Idaho limited liability company into its members because there is no unity of interest.  They further maintain that the Trust was valid under Idaho law and contained a spendthrift provision which prohibits distributions from the Trust to creditors.[4]

Defendants are mistaken about the role of state law in the substantive consolidation analysis.  Substantive consolidation does not exist outside the context of a bankruptcy proceeding.  It is available in bankruptcy courts as an alternative to remedy

---

[4] The bankruptcy court did not decide that the spendthrift clause was valid or invalid.  We do not consider this issue for the first time on appeal.  Cold Mountain, 375 F.3d at 891.

-11-

the harms caused by debtors and entities they control who disregard separateness. In short, the law of substantive consolidation is federal bankruptcy law and is not dependent upon state law concepts. In re Bonham, 226 B.R. 56, 77 (Bankr. D. Alaska 1998).

To more thoroughly explain this concept, the Bonham bankruptcy court observed:

> The factors evaluated on a motion for substantive consolidation appear similar to an analysis of piercing the corporate veil. Like piercing the corporate veil, substantive consolidation ignores artificial structures legally defining the consolidated entities. Ultimately, however, such an analogy is misplaced because the corporate law doctrine of limited liability is not involved. Rather, substantive consolidation is more like the corporate law notion of enterprise liability because substantive consolidation does not seek to hold shareholders liable for the acts of their incorporated entity. Substantive consolidation more closely resembles the bankruptcy rule of subordination because competition for the consolidated assets is between creditors alone. Thus, substantive consolidation ignores artificial legal structures but looks only to the combined assets of the consolidated entities for satisfaction of all claims against the collective group.
>
> . . . .
>
> Piercing the corporate veil . . . is not a requisite to the utilization of the bankruptcy law remedy of substantive consolidation. The bankruptcy remedy of substantive consolidation ensures the equitable distribution of property to all creditors, while on the other hand, piercing the corporate veil is a limited merger for the benefit of a particular creditor.

Id. at 77, 89. In sum, the bankruptcy court did not err by failing to consider Idaho property rights in its substantive consolidation analysis.

-12-

**C. The bankruptcy court did not err when it granted the substantive consolidation motion nunc pro tunc.**

Substantive consolidation is an uncodified, equitable doctrine allowing the bankruptcy court, for purposes of the bankruptcy, to "combine the assets and liabilities of separate and distinct—but related—legal entities into a single pool and treat them as though they belong to a single entity." In re Bonham, 229 F.3d at 764. The doctrine "enables a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." Id. The essential purpose behind the doctrine is one of fairness to all creditors, but it is a doctrine to be used sparingly. Id. at 764, 768.

In Bonham, the Ninth Circuit adopted the analysis and standards for substantive consolidation articulated by the Second Circuit in Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.), 860 F.2d 515 (2d Cir. 1988). In re Bonham, 229 F.3d at 766. The Bonham court summarized those standards in a two-part disjunctive test which requires bankruptcy courts to consider whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit or whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. Id. at 766. "The presence of either factor is a sufficient basis to order substantive consolidation." Id. "In either case, the bankruptcy court must in essence determine that the assets of all of the consolidated

-13-

parties are substantially the same." Id. at 771. Ultimately, the decision to apply the substantive consolidation doctrine stems from a weighing of the equities and must be tailored to meet the needs of each particular case. Id. at 771.

Trustee, as the moving party, has the initial burden of showing either one of the Bonham factors are met. Luxury Jewels, LLC v. Akers (In re Aroonsakool), 2014 WL 1273696, at *8 (9th Cir. BAP Mar. 28, 2014) (citing Reider v. Fed. Deposit Ins. Corp. (In re Reider ), 31 F.3d 1102, 1107 (11th Cir. 1994)). Once the trustee establishes a close interrelationship between the debtor and the non-debtor entities, there is a presumption that creditors did not rely on their separate credit. The burden of proof then shifts to the parties opposing substantive consolidation to show otherwise. In re Bonham, 229 F.3d at 767.

In applying Augie/Restivo's approach, the Bonham court concluded that substantive consolidation was appropriate where: (1) the target entities were "but instrumentalities of the bankrupt with no separate existence of their own;" (2) there "existed a unity of interest and ownership common to all corporations" such that there was commingling of assets; (3) there was "no clear demarcation" between the affairs of the debtor and the target entities; and (4) adhering to the separate corporate entities theory would result in an injustice to the bankrupt's creditors. In re Bonham, 229 F.3d at 767. Here, these factors are demonstrated in the record by Debtor's financial and operational commingling of his personal affairs with the Trust and the LLC.

As to the Trust, except for the written trust agreement and

-14-

amendment,[5] there is nothing in the record which shows a distinction between the Trust and Debtor's personal affairs. At all times, until May 31, 2013, the record shows that Debtor had the exclusive and complete dominion and control over all aspects of the Trust. Under the trust agreement, Debtor had unfettered authority as trustee to make distributions to himself. Acting pursuant to this authority, he made distributions to himself for his personal benefit and made lesser distributions to his children. The record shows that all distributions came directly from the LLC's funds.

As noted by the bankruptcy court, there was no record keeping or accounting to establish any distributions to the "member" of the LLC, i.e., the Trust - nor was there any accounting of distributions by Debtor (as trustee of that Trust) to himself (as grantor/beneficiary) or to his children as beneficiaries outside of the LLC's Quickbook "owner draws" entries. In short, no monies from the LLC were ever deposited into a Trust bank account - there wasn't one - and there were no records of activities concerning the Trust from 2008 to 2012.

Debtor's disregard of Trust provisions is also demonstrated by his selection of a successor trustee after he resigned as trustee. As noted above, § 4.04 of the trust agreement provided that Judith Appleby (Debtor's sister) would be the successor

---

[5] As pointed out by the bankruptcy court, the trust agreement was ambiguous and inconsistent. One provision stated that it was irrevocable and not subject to amendment, while another provision gave Debtor as grantor the authority to amend any of the provisions in the Trust. Furthermore, when Debtor attempted to amend the trust agreement to make it irrevocable the relevant provisions were once again inconsistent.

trustee once Debtor resigned. If she did not serve, the trust agreement provided that the court would appoint a trustee. Notwithstanding these provisions, once Debtor resigned as trustee he contacted Robert Jones[6] who agreed to be the successor trustee. After Trustee and other creditors pointed out to the LLC and the Trust that Mr. Jones was not a proper trustee pursuant to § 4.04 of the trust agreement, Ms. Appleby was named as trustee. There is no resignation letter from Mr. Jones in the record. He testified that at some point he was removed as trustee but he could not recall when that was. He also testified that even after he was appointed, it was his impression that Debtor was the trustee of the Trust and manager of the LLC stating: "I had no functionality."

Ms. Appleby testified that, when Debtor realized the trust agreement specifically identified her as the successor trustee if Debtor were to resign, it made sense for her to serve rather than Mr. Jones, who lived outside the region. She did not sign any documents to effect this change, but testified that she became the trustee of the Trust and the "manager" of the LLC by September 2013. The bankruptcy court observed that because Ms. Appleby assumed her duties in the fall of 2013, she provided little testimony as to financial transactions of the LLC or Trust, all of which preceded her involvement as trustee.

The record also shows that from the LLC's inception in February 2008 through May 31, 2013, Debtor exercised total and

---

[6] Robert Jones was involved in a relationship with Debtor's ex-wife Stacy Thomas and was like a "step father" to Debtor's children.

sole control over the LLC's operations. Again, the lack of separateness between the LLC and Debtor's personal affairs is demonstrated in the record. Payments reflected as "Jay's Income owner draws" were used to pay for Debtor's personal expenses. For example, the LLC paid Debtor's student loan payments, credit card bills, child support payments, house payments for his children, mortgage payments for rental property owned by Debtor, and personal expenses for Debtor's then-girlfriend. From 2008 to May 2013, the LLC paid approximately $6,500 on a monthly basis for Debtor's personal expenses, and the vast majority of these payments were made directly to other parties on his behalf - not to Debtor himself.

With few exceptions, Debtor was also personally liable for the LLC's liabilities. Therefore, many of the LLC's creditors were also creditors in Debtor's bankruptcy case. One of the creditors testified that he had no good understanding of the difference between the LLC and Debtor. Other creditors did not draw distinctions, as shown by various checks made out to "Crystal Springs Ranch," "Jay Clark," "Clark's Crystal Springs," and "Clark's Crystal Springs Ranch."

Debtor also did not separate himself from the LLC. According to the record, during the 2012 farm season, Debtor, not the LLC, contracted with DeVries Family Farm and Van Boven Calf Ranch to sell them hay. Further, no tax returns were filed for the LLC, but instead the operations of the LLC merely passed through to Debtor and were reported on his personal tax returns.

Debtor failed to draw distinctions between himself and the LLC even in his bankruptcy filing. He filed his chapter 12

petition as "Jay P. Clark, DBA Crystal Springs Ranch." He conflated the LLC's assets and his own in his bankruptcy schedules. For example, he listed as "personal property of the debtor" several LLC checking accounts. He also listed crops consisting of 1,124 acres of wheat (worth $451,848) and 1,150 acres of hay ($832,140). He did not, however, indicate any ownership of real property on which such crops could be grown. His disclosure of leased ground was unclear as to which was the LLC's and which was his. His statement of financial affairs indicated Debtor had gross income from the operation of "his" business of $2.4 million in 2011 and almost $1.3 million in 2010. These figures were not shown to be distributions from the LLC, distributions from the Trust, or income from the crops he allegedly personally grew, as distinguished from the gross income of the LLC.

Besides the confusion caused by Debtor's schedules, the record shows that the LLC's assets consisted mainly of farm equipment which was leased from Debtor's parents. But the "leased" equipment was depreciated on Debtor's tax returns and not shown as an expense. In responding to discovery, Debtor provided a list of farm machinery "owned" by the LLC. That list shows an auction value of $364,600. Ms. Appleby testified that the LLC's assets consisted of farm equipment that she had not inventoried. In the end, it was unclear what assets were the LLC's as opposed to Debtor's.

In sum, the commingling of assets and the operation of the Trust and the LLC without any formality demonstrates a close interrelationship between Debtor and the Trust and the LLC.

-18-

Once Trustee established a close interrelationship between Debtor and the LLC and its member Trust, there is a presumption that creditors did not rely on their separate credit. The burden of proof then shifts to the parties opposing substantive consolidation to show otherwise. In re Bonham, 229 F.3d at 767.

Here, rather than pointing to any evidence in the record to rebut this presumption, Defendants complain that Trustee's evidence does not show that the creditors dealt with Debtor and Defendants as a single economic unit and, therefore, he did not meet his burden of proof. Defendants suggest, without citation to any authority, that the Bonham test for substantive consolidation requires Trustee to prove what the creditors thought and actually did. Defendants are mistaken.

Defendants, as the parties opposing substantive consolidation, had the burden to overcome the presumption that creditors did not rely on the separate credit of the LLC. While Defendants attempted to show the separateness of the LLC and its member Trust, the bankruptcy court found Defendants' evidence "conflicting and inconclusive" and Debtor's testimony not credible or trustworthy. In essence, the bankruptcy court concluded that Defendants did not meet their burden to overcome the presumption once the burden shifted. Therefore, it concluded that the first prong for substantive consolidation was met.

Upon careful review of the record, we are satisfied that the bankruptcy court considered all opposing evidence before rejecting one view in favor of the other. The bankruptcy court's account of the evidence is plausible in light of the

record cited above and when viewed in its entirety. We may not reverse merely because we may have decided the issue differently. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Further, as the trier of fact, the bankruptcy court is entitled to evaluate a witness's credibility and to determine whether to believe the testimony or not. Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 731 (9th Cir. BAP 1999), aff'd mem. 5 F. App'x 743 (9th Cir. 2001). "When the testimony of a witness is not believed, the trier of fact may simply disregard it." Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 512 (1984). The bankruptcy court's determinations regarding credibility are given due regard on appeal. Anderson, 470 U.S. at 573-74.

In the end, we conclude that the record supports the bankruptcy court's conclusion that the first test in Bonham was met and, therefore, consolidation was appropriate. Because we affirm on this basis, it is unnecessary for us to consider whether consolidation was appropriate under the second factor.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.