## NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> JAMES MANUEL RODRIGUEZ, <br>      Debtor. | BAP No. SC-17-1245-FLB <br><br> Bk. No. 15-02444-CL7 |
| JAMES MANUEL RODRIGUEZ, <br>      Appellant, <br> v. <br> STATE FARM MUTUAL AUTOMOBILE <br> INSURANCE COMPANY, <br>      Appellee. | Adv. No. 15-90095-CL <br><br> **MEMORANDUM*** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Bankruptcy Judge, Presiding

Before: FARIS, LAFFERTY, and BRAND, Bankruptcy Judges.

---

 * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Appellant James Manuel Rodriguez transferred a Ferrari, his prized possession, to his ex-girlfriend. When the relationship soured, he took the Ferrari and refused to return it. Appellee State Farm Mutual Insurance Company ("State Farm") paid his ex-girlfriend for the loss of her car. When Dr. Rodriguez filed for chapter 7[1] bankruptcy protection, State Farm sought to have its subrogation claim against Dr. Rodriguez declared nondischargeable under § 523(a)(6). After a trial, the bankruptcy court determined that Dr. Rodriguez had caused willful and malicious injury by converting the Ferrari.

Dr. Rodriguez appeals, arguing that he did not intend to injure his ex-girlfriend and relied on the advice of counsel in withholding the car. He also argues that his ex-girlfriend had unclean hands and that the court should not have awarded State Farm its full damages.

The bankruptcy court properly identified the applicable law and made appropriate findings of fact, including credibility determinations. Accordingly, we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FACTS[2]

### A. Prepetition events

In 2005, Dr. Rodriguez began a two-year romantic relationship with Shirley Sun. They jointly purchased a house in San Diego, California (the "Porter Creek Property"). Ms. Sun helped Dr. Rodriguez open his dental practice, where she served as the office manager, business developer, and the referral source of the bulk of its clientele.

Their romantic relationship ended in 2007, but they continued to live together. In 2010, Ms. Sun began dating William Curtis, who also moved into the Porter Creek Property and began working at Dr. Rodriguez's dental practice. Dr. Rodriguez, Ms. Sun, and Mr. Curtis agree that, at first, they lived together happily.

Beginning in 2011, Dr. Rodriguez began experiencing financial difficulties. He could not pay his bills and transferred certain real and personal property to Ms. Sun. In 2013, Dr. Rodriguez put his dental practice into chapter 11 bankruptcy, and the practice later dissolved.

Dr. Rodriguez was an exotic automobile enthusiast who owned several cars, including the 1995 Ferrari 348 Spider around which this appeal revolves. He obtained two title loans using the Ferrari as collateral. Under the second loan, he paid a $5,000 fee to get a $10,000 loan. When the

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008). We rely partially on the bankruptcy court's recitation of the basic facts in its memorandum decision.

final payment became due in June 2011, at Dr. Rodriguez's request, Ms. Sun paid off the note's balance to save his prized Ferrari.[3] He then transferred title to the Ferrari to Ms. Sun. They valued the Ferrari at $37,000 on the transfer paperwork.[4]

Ms. Sun then insured the Ferrari with State Farm. The policy named Dr. Rodriguez as an additional driver and included coverage for loss due to theft. Ms. Sun and Dr. Rodriguez agreed that he would drive the Ferrari only if he obtained Ms. Sun's permission.

The household relationship deteriorated thereafter. In April 2013, Ms. Sun and Mr. Curtis left Dr. Rodriguez's dental practice and opened their own spa business. While Ms. Sun and Mr. Curtis were abroad, Dr. Rodriguez abruptly moved out of the Porter Creek Property on May 4, 2013. He took the Ferrari, left a note stating that the Ferrari was safe, and placed it at the shop of automobile mechanic Steve Maxwell.

Upon their return, Ms. Sun and Mr. Curtis immediately demanded that Dr. Rodriguez return the Ferrari. Dr. Rodriguez refused.

After he removed the Ferrari from the Porter Creek Property, Dr. Rodriguez sought legal advice from the law firm that was representing

---

[3] Dr. Rodriguez maintains that the final payment was $1,000 and that he was current on the payments. Ms. Sun and Mr. Curtis testified that Ms. Sun paid $12,000 at Dr. Rodriguez's request. The bankruptcy court credited the latter testimony but found that the exact amount was irrelevant to the ultimate issues at trial.

[4] The parties dispute the amount of money Ms. Sun paid Dr. Rodriguez for the Ferrari.

his dental practice in its bankruptcy case.[5] On May 6, 2013, he met with attorney Nuni Reznik to discuss the Ferrari. Over the next few weeks, Mr. Reznik advised him to move the car to a neutral location. (Dr. Rodriguez later moved the Ferrari to the personal garage of another of Mr. Maxwell's clients.)

Shortly thereafter, Dr. Rodriguez sued Ms. Sun and Mr. Curtis in state court for fraud and conversion. The parties engaged in an unsuccessful mediation. Dr. Rodriguez and Mr. Reznik discussed the possibility of seeking a temporary restraining order against Ms. Sun and Mr. Curtis, but they ultimately did not do so. The record does not reveal the final disposition of the state court action.

In July 2013, Ms. Sun filed a stolen vehicle report with the police. She also made a claim under the State Farm policy. State Farm investigated her claim and paid her $56,855.51. It later recovered the Ferrari and sold it at auction, but the net unrecovered balance was $42,003.51.

## B. The chapter 7 bankruptcy case and adversary proceeding

Later, Dr. Rodriguez filed a chapter 7 petition and scheduled State Farm's $57,000 unsecured claim. Dr. Rodriguez received his discharge and the court closed the case.

State Farm timely filed an adversary proceeding against

---

[5] Dr. Rodriguez testified that he consulted with his attorneys about the Ferrari before he took it, but the bankruptcy court did not credit that testimony, instead finding that he first talked to counsel about the car a few days after he took it.

Dr. Rodriguez. It alleged that Dr. Rodriguez wrongfully took the Ferrari from Ms. Sun; that it paid Ms. Sun for the loss of the vehicle pursuant to her insurance policy and was subrogated to her claims against Dr. Rodriguez; and that the claim was nondischargeable under § 523(a)(6).

## C. Trial and decision

Prior to trial, the parties submitted a joint stipulation of facts. They agreed that the sole issue for trial was "whether Rodriguez'[s] taking and/or refusing to return the Ferrari constituted a 'willful and malicious injury' under Section 523(a)(6) thereby rendering State Farm's claim against Rodriguez nondischargeable." The stipulation was incorporated into the court's pretrial order.

The bankruptcy court held a three-day trial. Dr. Rodriguez's defense centered on his "benign" motives and lack of intent to injure Ms. Sun. He testified that he, Ms. Sun, and Mr. Curtis were living as "one big happy family." He said that in 2013, he "came out of a fog" and realized that Ms. Sun had been taking advantage of him. He testified that he believed that ownership of the Ferrari was disputed, so he did not think that he was wrongfully taking the car. He stated that he relied on Mr. Reznik's advice to hold the Ferrari in a neutral location and that Mr. Reznik did not advise him to return the car.

Mr. Reznik testified that, to the best of his recollection, Dr. Rodriguez first talked to him about the Ferrari after he had taken possession of it. He testified that he did not advise Dr. Rodriguez to take the Ferrari, only that

it should be held by a neutral third-party.

The bankruptcy court made detailed findings of fact and generally did not credit Dr. Rodriguez's testimony. It found that Ms. Sun bought the Ferrari from Dr. Rodriguez and was the sole owner of the car; the court did not believe Dr. Rodriguez's inconsistent stories about how she became the titleholder.

The bankruptcy court found that Mr. Reznik did not and could not have counseled Dr. Rodriguez about taking the Ferrari beforehand.

The court concluded that Dr. Rodriguez had intentionally committed the state law tort of conversion. Ms. Sun had sole title and possession of the Ferrari, yet Dr. Rodriguez removed the Ferrari and never returned it. His conduct was wrongful and violated Ms. Sun's rights. The taking harmed Ms. Sun by depriving her of her property.

The court also separately held that State Farm had established the "willful" and "malicious" prongs of § 523(a)(6). As to willfulness, it found both that Dr. Rodriguez had a subjective motive to injure Ms. Sun and he believed that injury was substantially certain to occur. As to malice, the court determined that Dr. Rodriguez committed a wrongful act, intentionally, and injured Ms. Sun. It further rejected Dr. Rodriguez's advice-of-counsel defense and held that he took the Ferrari without just cause or excuse.

Finally, the court awarded State Farm damages in the amount of $42,003.51 – representing the undisputed balance of the amount it paid to

Ms. Sun on her insurance claim minus its recovery after the Ferrari was sold at auction – plus pre- and post-judgment interest.

Dr. Rodriguez filed a motion for reconsideration. He argued that the court: (1) erred in accepting $42,003.51 as the measure of damages; (2) failed to adequately consider his subjective intent; (3) failed to properly consider the "reliance on the advice of counsel" defense as negating a finding of malice; and (4) failed to consider his anti-subrogation waiver defense.

The bankruptcy court rejected each of Dr. Rodriguez's arguments. It noted that none of the arguments were presented at trial or in a post-trial brief, and it also rejected them on the merits.

Dr. Rodriguez timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(I). We have jurisdiction under 28 U.S.C. § 158.[6]

---

[6] Some of the issues that Dr. Rodriguez presents on appeal were not before the bankruptcy court at trial and were raised for the first time in his motion for reconsideration. Although Dr. Rodriguez's notice of appeal refers only to the judgment and not the order denying reconsideration, we will review those issues stemming from the motion for reconsideration. *Le v. Astrue*, 558 F.3d 1019, 1022-23 (9th Cir. 2009) (Even if an order "'does not appear on the face of the notice of appeal,' we are to consider: '(1) whether the intent to appeal a specific judgment can be fairly inferred and (2) whether the appellee was prejudiced by the mistake.'" (quoting *Lolli v. Cty. of Orange*, 351 F.3d 410, 414 (9th Cir. 2003)). It is fairly obvious that Dr. Rodriguez intended to appeal from the reconsideration order, and State Farm had an opportunity to brief the issues and did so. But we will not overlook Dr. Rodriguez's failure to raise certain issues at trial.

8

## ISSUE

Whether the bankruptcy court erred in declaring State Farm's subrogation claim nondischargeable under § 523(a)(6).

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's legal conclusions, including its construction of § 523(a)(6). *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 318 (9th Cir. BAP 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019) (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

The clear error standard applies to the bankruptcy court's factual findings, including a party's mental state. *In re Hamilton*, 584 B.R. at 318. Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

## DISCUSSION

**A.  Section 523(a)(6) excludes from discharge debts arising from "willful and malicious injury."**

The bankruptcy court correctly recited the standard for determining whether the claim was dischargeable under § 523(a)(6). That section excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" § 523(a)(6). The creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). "Under Ninth Circuit law, willfulness and malice are two distinct elements that must not be conflated." *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282, 296 (Bankr. C.D. Cal. 2006).

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Su*, 290 F.3d at 1142; *see Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("A 'willful' injury is a 'deliberate or intentional injury, not merely a deliberate or intentional **act** that leads to injury.'" (citation omitted)). This analysis requires an inquiry into the debtor's subjective state of mind. *See In re Su*, 290 F.3d at 1145-46. In other words, it is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

"A 'malicious' injury involves '(1) a wrongful act, (2) done

10

intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997)).

The tort of conversion under California law does not necessarily satisfy the "willful and malicious" standard. *Zeeb v. Farah (In re Zeeb)*, BAP No. CC-15-1012-FKiKu, 2015 WL 6720934, at *5 (9th Cir. BAP Nov. 3, 2015) ("Conversion under California law does not require a showing that the defendant subjectively intended to injure the plaintiff or subjectively knew that the defendant's conduct was substantially certain to injure the plaintiff."). Nevertheless, conversion may satisfy the willful and malicious prongs of § 523(a)(6) if the trier of fact makes the appropriate findings about the debtor's mental state. *See In re Sandoval*, 341 B.R. at 295 ("Consequently, to prevail on its claim of nondischargeability [under § 523(a)(6)], [the creditor] must first establish that a conversion has occurred under California law, and second that the conversion is willful and malicious.").

**B.     The bankruptcy court did not err in determining that Dr. Rodriguez had caused willful and malicious injury.**

The bankruptcy court carefully sorted through the evidence and determined that State Farm had satisfied each element of § 523(a)(6). It found that Dr. Rodriguez intended to cause willful and malicious injury to Ms. Sun and that his testimony to the contrary was not credible. These

11

findings easily pass muster under the "clearly erroneous" standard of review.

### 1.    Dr. Rodriguez's "willful" intent at the time of taking

Dr. Rodriguez argues that the bankruptcy court erred in finding that the point of inquiry for his "willful intent" was the moment he took the car. He argues that, before Ms. Sun demanded the return of the car, the taking "was an inchoate tort, an incipient act, not yet wrongful."

The "inchoate tort" contention is absurd. One would never say that arson is not committed until the homeowner returns to find her home in ashes. As soon as Dr. Rodriguez took the vehicle, he committed the tort of conversion. "Under California law, conversion is defined as 'the wrongful exercise of dominion over the personal property of another.' . . . More specifically, conversion includes: 'any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein.'" *In re Sandoval*, 341 B.R. at 295-96 (citations omitted). As the bankruptcy court comprehensively explained, Dr. Rodriguez's taking of the Ferrari was a wrongful act that deprived Ms. Sun of her right to her car. His conduct was tortious even though she did not yet know that he had wronged her.[7]

The remaining question for purposes of § 523(a)(6) was whether the injury was "willful and malicious." The bankruptcy court did not clearly

---

[7] Even if the tort was contingent upon Ms. Sun realizing that Dr. Rodriguez had taken the Ferrari, it is undisputed that she and Mr. Curtis demanded that he return the

err when it rejected Dr. Rodriguez's testimony that his intention was "benign." As the trier of fact, the court closely listened to his testimony, found him not credible, and rejected his versions of events. *See Wilczak v. Select Portfolio Servicing, Inc. (In re Wilczak)*, 830 F. App'x 545, 546 (9th Cir. 2020) ("[W]e give singular deference to a trial court's judgments about the credibility of witnesses,' including the bankruptcy court's determinations that [a witness's] testimony was credible and the [debtors'] testimony was implausible." (quoting *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017))). Based on the evidence that the court found credible, the court found that Dr. Rodriguez's state of mind when he took the Ferrari was not "benign."

The bankruptcy court found that Dr. Rodriguez subjectively intended to injure Ms. Sun because he was angry that she and Mr. Curtis had left the dental practice and that he wanted to prevent her from selling the Ferrari. It found that "[h]is willful intent suffused the entire scheme . . . ." It also found that his plan was premeditated and that he admitted in his trial brief that he was intending a "polygamous divorce" akin to dropping a "nuclear bomb." The finding that he had a subjective intent to harm Ms. Sun was not clearly erroneous.

The court found that Dr. Rodriguez believed that injury was substantially certain to result. It stated that his plan was premeditated, and he undoubtedly understood that the Ferrari was not his. He deprived Ms. Sun of both the use of the Ferrari and the value of the car. The court's

car immediately upon their return, and Dr. Rodriguez refused.

13

finding that the injury was willful was not clearly erroneous.

## 2. Dr. Rodriguez's alleged reliance on advice of counsel

Second, Dr. Rodriguez argues that the bankruptcy court erred in not finding that he relied on the advice of counsel as a "just cause or excuse" to negate the malice prong of § 523(a)(6). He acknowledges that there may be "considerable dispute" as to whether he relied on Mr. Reznik's advice before taking the car, but he maintains that he relied on Mr. Reznik's advice in not returning the car.

In the context of bankruptcy and dischargeability, the Ninth Circuit has stated:

> It is true that "[g]enerally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." That reliance, however, must be "in good faith." This court has held that the advice of counsel claim is not a separate defense, but rather "a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent."

*Maring v. PG Alaska Crab Inv. Co. LLC (In re Maring)*, 338 F. App'x 655, 658 (9th Cir. 2009) (internal citations and emphasis omitted). The defendant has the burden of proving the requisite elements of advice of counsel. *See Stephens v. Stinson*, 292 F.2d 838, 838 (9th Cir. 1961) ("Of course, it is usually a question of fact whether clients implicitly relied on advice of counsel. . . . And, clearly, here the burden of proof shifted to the bankrupts.").

In other words, the advice of counsel can negate the mental state required by § 523(a)(6) only if the debtor establishes that his counsel gave

advice and that the debtor acted in good faith reliance on that advice. *CWB Holdings, LLC v. Anderson (In re Anderson)*, BAP No. AZ-17-1071-FSKu, 2017 WL 5163443, at \*8 (9th Cir. BAP Nov. 7, 2017).

Dr. Rodriguez did not establish that Mr. Reznik advised him to take the Ferrari before he did so. Although there was conflicting testimony, the court found that Dr. Rodriguez first met with Mr. Reznik days after taking the Ferrari. Dr. Rodriguez does not contest this finding on appeal. Accordingly, the court did not err in holding that Mr. Reznik's advice could not have affected his mental state at the time he took the Ferrari.

Moreover, it does not matter that Mr. Reznik did not later advise him to return the car. As discussed above, the conversion that injured Ms. Sun occurred when Dr. Rodriguez took the car, so Mr. Reznik's advice after the fact was not relevant.

### 3. Ms. Sun's unclean hands affecting State Farm's rights

Dr. Rodriguez contends that Ms. Sun was disingenuous and lied to State Farm about the Ferrari's disappearance. He claims that she had ulterior motives and that her "unclean hands" should be attributed to State Farm.

Dr. Rodriguez is raising this issue for the first time on appeal, and we need not consider it. *See Clark's Crystal Springs Ranch, LLC v. Gugino (In re Clark)*, 548 B.R. 246, 252 (9th Cir. BAP 2016), *aff'd*, 692 F. App'x 946 (9th Cir. 2017). Additionally, as the bankruptcy court pointed out multiple times at trial, it was Dr. Rodriguez's actions and intent, not Ms. Sun's, that were at

15

issue. In fact, the parties stipulated prior to trial that "[t]he appropriateness of State Farm's subrogation claim is undisputed . . . ." The stipulations were incorporated into the court's pretrial order. The bankruptcy court did not err when it enforced the pretrial order. *See Pierce Cty. Hotel Emps. & Rest. Emps. Health Tr. v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1329 (9th Cir. 1987) ("Issues not preserved in the pretrial order are eliminated from the action. . . . The trial court thus appropriately restricted its decision to those issues raised in the pretrial order and disregarded issues raised only in the trial brief.").

### 4. The value of the Ferrari

Dr. Rodriguez argues that "[d]amages were still at issue." He contends that the court should have credited Mr. Maxwell's testimony that the Ferrari was worth only $22,000 to $25,000, not $56,855, and that State Farm did not properly investigate Ms. Sun's claim.

However, by agreement of the parties, the amount of damages was not an issue at trial. The parties stipulated that the only issue for trial was whether Dr. Rodriguez caused a "willful and malicious injury" under § 523(a)(6). They stipulated that State Farm's damages totaled $42,003.51 and that there was no dispute that it had the right to seek to recover that amount:

> **The appropriateness of State Farm's subrogation claim is undisputed** in that there is no issue that Sun was insured by State Farm, she made a covered claim, the claim was paid, **the payment was reasonable and State Farm,** standing in her shoes

16

as subrogee, **now has the right to pursue recovery of the balance of the claim which is $42,003.51** from the parties legally responsible for causing the loss.

(Emphases added). Dr. Rodriguez cannot belatedly attempt to challenge the stipulated amount of damages, particularly when State Farm did not have a fair opportunity to address the issue at trial.[8]

## CONCLUSION

The bankruptcy court did not err in declaring State Farm's claim nondischargeable in the total amount of $42,003.51 plus pre- and post-judgment interest. We AFFIRM.

---

[8] Dr. Rodriguez raised another point in his statement of issues on appeal: "Whether the Bankruptcy Court committed an error of law in finding that, despite evidence that Appellant was an additional driver on Appellee's insured's policy at the time of the alleged conversion, the anti-subrogation waiver did not apply to bar Appellee's recovery against Appellant." We will not consider this issue because Dr. Rodriguez did not address it in his opening brief. *See Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006). Further, State Farm's ability to recover against Dr. Rodriguez under Ms. Sun's automobile insurance policy was not an issue for trial identified in the parties' stipulation or the pretrial order. *See Pierce Cty. Hotel Emps. & Rest. Emps. Health Tr.*, 827 F.2d at 1329.